**UNITED STATES of America,**
**Appellee,**

v.

**Anthony LEONE aka "Shaggy", aka Donovan Lindo, Eveline Henry, aka "Rose", Joseph Dodd, aka "Mikey", Ann Marie Murdock, Winston George Weir, aka "Bushy", Lyndal Charles Scott, aka "Scotty", Roberta James, Eugene Gayle, Defendants,**

**Daniel Thompson, aka "Danny",**

**Docket No. 99–1255**

United States Court of Appeals, Second Circuit.

Decided: June 14, 2000

William E. Craco, Assistant United States Attorney for Mary Jo White, United States Attorney, Southern District of New York, for Appellee.

Sanford M. Katz, New York, N.Y., for Defendant–Appellant.

Before: WALKER, CALABRESI, KATZMANN, Circuit Judges.

CALABRESI, Circuit Judge:

## BACKGROUND

Appellant Daniel Thompson was arrested on August 29, 1997 and charged with conspiring to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846. Thompson retained Rudy Velez as counsel. The government offered Thompson a plea agreement, dated February 11, 1998 ("First Agreement"), which he rejected. Subsequently, however, the government offered a second plea agreement, dated June 16, 1998 ("Second Agreement"), which Thompson accepted. The Second Agreement contained a stipulation providing that, because Thompson was an organizer, leader, manager, or supervisor in the conspiracy, a two-level increase in his offense level would be imposed pursuant to the Sentencing Guidelines § 3B1.1(c), and that his resulting sentencing range would be 78 to 97 months. This two-level increase was not included in the First Agreement.

Having waived his right to have his plea taken by the district judge (Preska, J.), Thompson appeared before Magistrate Judge James C. Francis on June 22, 1998 and pleaded guilty to conspiring to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B). When asked by Magistrate Judge Francis whether he was satisfied with his attorney, Thompson stated that he was unsure whether Velez had previously handled fed-

eral criminal cases, but he went on to affirm that this uncertainty did not affect the voluntariness of his plea. Judge Francis found that Thompson's plea was knowing and voluntary and recommended that the district court accept it.

On July 6, 1998, Thompson wrote a letter to Judge Preska stating that he wished to withdraw his guilty plea. By memo endorsement of that letter, the district court informed Thompson that any motions on Thompson's behalf needed to be made through his attorney. At a conference held before Judge Preska in August 1998, the district court relieved Velez at Thompson's request and, pursuant to the Criminal Justice Act, appointed Sanford M. Katz, who remains Thompson's attorney on appeal. Katz thereafter informed the district court that Thompson would not move to withdraw his plea.

Thompson was sentenced on April 15, 1999. Asking the district court to sentence Thompson to the bottom of the Guidelines range, Katz argued that the two-point increase in the Second Agreement had been absent from the First Agreement and that he thought that Thompson's failure to accept the more favorable offer resulted from "some terrible advice from an attorney who clearly was not familiar with either the sentencing guidelines or federal criminal procedure."[1] The district court sentenced Thompson to 78 months' incarceration, the bottom of his Guidelines range.

On April 23, 1999, Thompson filed, *pro se,* a timely notice of appeal. Katz subsequently filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that, after reviewing the record, he believed that there were no non-frivolous issues to be raised on appeal. The government, in turn, moved for dismissal of the appeal, or in the alternative for summary affirmance. We denied both motions and directed Katz to

brief the issue of whether Velez was ineffective in failing to advise Thompson adequately concerning the First Agreement. Instead of doing so, Katz submitted a new motion asking us to hold further briefing in abeyance and to remand the case to the district court so that an evidentiary hearing could be conducted on the ineffective assistance issue. He argued that "the record is . . . bereft of any reference to the rejected, but obviously more beneficial, initial plea offer," and that "[i]t is therefore impossible for appellant's present counsel to meaningfully address" the issue of trial counsel's possible ineffective assistance in that regard without an evidentiary hearing to develop the record. The government opposes such a remand and cross-moves for the dismissal of Thompson's appeal or, in the alternative, for summary affirmance, arguing that we should not consider an ineffective assistance of counsel claim that cannot be decided by us on the existing record and that such claims should be made later in a 28 U.S.C. § 2255 habeas corpus petition.

## DISCUSSION

In support of its position, the government cites *Billy–Eko v. United States,* 8 F.3d 111 (2d Cir.1993). The government contends that, under *Billy–Eko* and its progeny, this Court has repeatedly held that we "ordinarily will not review an ineffectiveness claim on direct appeal when the record on the issue is silent, and that the appropriate vehicle for raising the ineffectiveness argument is a [habeas] petition." In *Billy–Eko,* however, we did not hold that, as a categorical matter, we would not hear ineffective assistance claims on direct appeal. We held merely that ineffective assistance of counsel claims not raised on direct appeal may be brought as part of a § 2255 petition except when (1) the habeas petitioner was represented by new counsel on direct appeal and (2)

---

**1.** The government argues that it was Velez who negotiated the First Agreement, and that he strongly advised Thompson to accept it,

but that Thompson ignored this advice and rejected the First Agreement to his own detriment.

the ineffective assistance claim was "based solely on the record developed at trial." *Id.* at 115.

In other words, *Billy–Eko* held that a defendant was not *required* to bring an ineffective assistance claim on direct appeal unless his claim fell within the "narrow category of cases" delineated by the two criteria. *United States v. Salameh,* 152 F.3d 88, 160 (2d Cir.1998) (per curiam), *cert. denied,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999). *Billy–Eko* did not hold that a defendant was *precluded* from bringing a claim for ineffective assistance in all other situations, or that we were prohibited from hearing such claims. Thus, in subsequent cases we have repeatedly emphasized "that the *Billy–Eko* doctrine is discretionary." *United States v. Williams,* 205 F.3d 23, 35 (2d Cir.2000) (quoting *Salameh,* 152 F.3d at 160–61). Moreover, in *Billy–Eko* itself, we noted that in certain circumstances in which an appellant raised a claim for ineffective assistance on direct appeal that did not meet the two criteria, we might "remand the claim to the district court" for further fact-finding. *Billy–Eko,* 8 F.3d at 116; *cf. United States v. Tarricone,* 996 F.2d 1414, 1418–20 (2d Cir.1993) (holding with respect to a claim for ineffective assistance on direct appeal that, because we could not determine whether trial counsel had acted unreasonably on the record before us, the correct course of action was to "remand the case for an evidentiary hearing to develop a factual record on the issue of ineffective assistance").

█ It is true that in the cases that followed *Billy–Eko* we have stated that there is a "baseline aversion to resolving ineffectiveness claims on direct appeal." *Williams,* 205 F.3d at 35 (quoting *Salameh,* 152 F.3d at 160–61); *see also United States v. Diaz,* 176 F.3d 52, 114 (2d Cir.) (noting "our disinclination to grant direct review of [ineffective assistance] claim[s]"), *cert. denied,* —— U.S. ——, 120 S.Ct. 314, 145 L.Ed.2d 153 (1999); *United States v. Workman,* 80 F.3d 688, 700 (2d Cir.1996)

(declining to hear an ineffective assistance claim on direct appeal because "the record [was] undeveloped"). Nevertheless, we have also clearly acknowledged that the *Billy–Eko* doctrine is no more than a "prudential rule" based on the common-sense observation that "[w]e cannot expect ineffective assistance claims to be raised on direct appeal—and therefore we should not penalize a petitioner for failing to raise them—when a petitioner's counsel on direct appeal also represented him at trial." *Ciak v. United States,* 59 F.3d 296, 303 & n. 3 (2d Cir.1995). The *Billy–Eko* rule therefore in no way limits our discretion to hear an ineffective assistance claim on direct appeal, or, when appropriate, to remand such a claim to the district court for additional fact-finding before considering the claim on direct appeal.

█ Thus, when faced with such a claim for ineffective assistance on direct appeal, we may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us. Although we have always had the discretion to choose among these three options, changes in the federal habeas law since *Billy–Eko* was written may, in appropriate cases, incline us to prefer the second option to the first.

The *Billy–Eko* doctrine was developed prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, which severely restricted the ability of a defendant to file more than one habeas petition. The AEDPA provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Courts of appeals may grant permission to file successive petitions only in two circumstances: (1) if "the

applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," and (2) if "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2244(b)(3). As a result, pre-AEDPA cases dealing with how to exercise our discretion under *Billy–Eko* offer only limited guidance today. *Cf. Adams v. United States,* 155 F.3d 582, 583–84 (2d Cir.1998) (noting that "[t]he enactment of AEDPA ... brings into play new considerations" and altering the prior district court practice of construing prisoners' motions as § 2255 petitions because of the negative effects such a practice might have in the post-AEDPA regime of strict limitations on successive petitions). But this does not mean that dismissal may not still be appropriate. *See, e.g., Williams,* 205 F.3d at 35 (declining, even post-AEDPA, to hear an ineffective assistance claim on direct appeal).

In this particular case, given the simplicity of Thompson's ineffective assistance claim, we choose to exercise our discretion to remand to the district court for further fact-finding rather than to dismiss the appeal and force the appellant to use up his only habeas petition. We retain jurisdiction to hear appellant's claims once the record has been supplemented. *See United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994).