20

UNITED STATES of America,
Appellee,

v.

Luis MEJIA, Defendant–Appellant.

No. 00–1399.

United States Court of Appeals,
Second Circuit.

July 18, 2001.

B. Alan Seidler, Nyack, NY, for appellant.

Andrew J. Ceresney, Assistant United States Attorney; Celeste L. Koeleveld, Assistant United States Attorney, and Mary Jo White, United States Attorney for the Southern District of New York, on the brief, for appellee.

Present MINER and LEVAL, Circuit Judges, RAKOFF,* District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

On April 28, 1988, an indictment was filed charging defendant-appellant Luis Mejia, Julio Reynoso, and Salvador Garcia with (1) conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, (2) possessing with intent to distribute 2.5 kilograms of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2, and (3) distribution of approximately one kilogram of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and

18 U.S.C. § 2. Mejia and his co-defendants stood trial on these charges in the United States District Court for the Southern District of New York from October 4, 1988 to October 7, 1988.

At trial, the government's case consisted of the testimony of a confidential informant, Mario Perez, and DEA Special Agent James Hunt, as well as cocaine and drug paraphernalia seized at the time of the arrests of Mejia and his co-defendants. Perez testified that he first met Mejia on April 7, 1988, when Perez, under the supervision of the DEA, went to 181st Street and Amsterdam Avenue in Manhattan to purchase three kilograms of cocaine. While waiting to complete the deal, Perez saw Mejia, who told Perez that if Perez's ongoing transaction did not work out, Mejia could supply him with the three kilograms of cocaine he was seeking.

On April 13, 1988, Mejia paged Perez. Soon thereafter, Perez called Mejia and asked him to "get three girls ready for me so that we can go out the following day," by which Perez claimed that he meant to request three kilograms of cocaine. Mejia agreed to the request and to meet Perez the following day at 181st Street and Amsterdam Avenue. On April 14, Perez met Mejia at the appointed location in his car. After an unsuccessful first attempt to procure the cocaine, Mejia saw Reynoso on the street and explained to Perez that Reynoso "can work out the problem we have with the three kilos ." After some discussion between Mejia and Reynoso, Reynoso got in the car and directed them to 141st Street and Amsterdam Avenue. They soon arrived at 505 West 141st Street, where Reynoso introduced Perez to Garcia, and told Garcia that Perez wanted to purchase three kilograms of cocaine.

---

\* Of the United States District Court for the Southern District of New York, sitting by designation.

Perez followed the two men into an apartment inside the building. Mejia waited in Perez's car. Inside the apartment, Garcia sold cocaine to Perez. As soon as he received the cocaine, Perez alerted DEA agents waiting outside the building. Certain agents arrested Mejia in the car, while others, including Agent Hunt, entered the apartment and placed Reynoso and Garcia under arrest.

Mejia presented no evidence in his defense and did not testify. At the close of the trial, the jury convicted Mejia and the other defendants on all three counts. The district court then scheduled sentencing for November 18, 1988. However, neither Mejia nor his co-defendants appeared for sentencing, and the district court issued bench warrants for their arrests. The grand jury then indicted all the defendants for failing to appear at sentencing.

Approximately ten years later, on September 2, 1998, Mejia was apprehended. On November 17, 1998, he pleaded guilty to bail jumping. Prior to sentencing, Mejia filed a motion pursuant to Fed. R.Crim.P. 33 or, in the alternative, 28 U.S.C. § 2255, for a new trial on the narcotics charges. Mejia's motion argued that evidence of misconduct on the part of Agent Hunt and his DEA team, Group 33, was newly discovered evidence and also that the government should have disclosed the evidence prior to trial. At a hearing on May 17, 2000, the district court construed the motion as a § 2255 motion ** and denied it "because nothing that has come to light about Agent Hunt occurred in connection with the case that we are now discussing.... The problems that surfaced regarding the conduct of Agent Hunt surfaced later, well after the convictions in this case. Moreover, the evidence

really was overwhelming against the defendants in this case." (J.A. 13)

The court then sentenced Mejia to concurrent terms of 100 months of imprisonment and four years of supervised release on each count of the drug trafficking indictment. The court also imposed a sentence of twenty months of imprisonment on the bail jumping conviction, to be served consecutively to the 100–month sentence, and three years of supervised release, to be served concurrently with the term of supervised release imposed on the narcotics convictions. This appeal followed.

On appeal, Mejia advances four arguments. First, Mejia contends that the evidence at his trial was insufficient as a matter of law to support his conviction for being a part of a drug conspiracy. This contention is altogether meritless. The jury's guilty verdict on the conspiracy charge must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, we have held that a jury verdict in a conspiracy case must be sustained so long as "there was evidence from which the jury could reasonably have inferred that the defendant knew of the conspiracy charged in the indictment and that he associated himself with the venture in some fashion, participated in it as something that he wished to bring about, or sought by his action to make it succeed." *United States v. Podlog,* 35 F.3d 699, 705 (2d Cir.1994) (internal quotations marks and alterations omitted).

■ Here, Mejia claims that the evidence was insufficient because (1) he never

---

** The court presumably construed the motion in this way because Rule 33 motions, when based on newly discovered evidence, "may be made only within three years after the verdict or finding of guilty." Fed.R.Crim.P. 33.

entered the apartment where the drug sale took place, (2) he was not paid for driving Perez to the scene of the sale, and (3) he was not a party to any conversations between Garcia and Reynoso. (Blue at 14) While Mejia's assertions are correct, they do not establish that the evidence against him was insufficient to support his conviction. Perez testified that: (1) Mejia suggested to Perez that Mejia could supply him with the three kilograms of cocaine that he was seeking; (2) Mejia contacted Perez and set up a meeting at which the three kilogram transaction would take place; (3) after the first transaction did not materialize, Mejia saw Reynoso, sought him out, and got assurances from Reynoso that he could provide the cocaine; and (4) Mejia, along with Perez and Reynoso, drove to the scene of the transaction. We find these facts sufficient to support the conspiracy conviction.

■ Mejia next asserts his trial counsel rendered constitutionally ineffective assistance because counsel refused to allow Mejia to testify despite his expressed desire to do so. We address the merits of this claim on direct appeal, *see United States v. Leone,* 215 F.3d 253, 256 (2d Cir.2000), and reject it. There is simply no support in the record for Mejia's assertion that his trial counsel refused to allow him to testify. Mejia offers nothing more than his own assertion in his appellate brief that his lawyer would not permit him to testify. Such an unsworn, self-serving assertion is insufficient, on its own, to establish ineffective assistance of counsel. *See Underwood v. Clark,* 939 F.2d 473, 475–76 (7th Cir. 1991).

■ Mejia's third argument is that the district court erred in denying his motion for a new trial based on evidence of misconduct on the part of Agent Hunt and his DEA team. Mejia contends that the government failed to comply with its dis-closure obligations under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), entitling him to a new trial. However, Mejia does not contest the district court's finding that evidence of Agent Hunt's misconduct did not become known until August 1990, almost two years *after* Mejia's trial. Thus, the government could not possibly have had a *Brady* obligation to disclose this information before Mejia's trial. *See United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998) ("The *Brady* obligation extends only to material information . . . that is known to the prosecutor."). Mejia also contends that the evidence regarding Hunt's misconduct constitutes newly discovered evidence that, on its own, entitles him to a new trial. To succeed on this claim, Mejia must show (1) "that the [newly discovered] evidence . . . could not have been discovered, exercising due diligence, before or during trial," and (2) "that the evidence is so material and non-cumulative that its admission would probably lead to an acquittal." *United States v. Siddiqi,* 959 F.2d 1167, 1173 (2d Cir.1992) (internal quotation marks omitted). Given the centrality of Perez's testimony to the government's case, it simply cannot be said that evidence that would impeach the credibility of Agent Hunt "would probably lead to an acquittal." *Id.* Hence, we reject Mejia's argument that the district court erred in denying his motion for a new trial.

■ Lastly, Mejia contends that the district court abused its discretion by refusing to grant a downward departure on the basis of Mejia's family circumstances and the fact that he led a law-abiding life in the period since his conviction. "[I]t is well established in this Circuit that a court's decision not to depart from the Guidelines is not normally appealable." *United States v. Brown,* 98 F.3d 690, 692 (2d Cir.1996). However, "[o]ne narrow excep-

**24**

tion exists for those cases in which the sentencing judge mistakenly believes that he or she lacks authority to grant a given departure." *United States v. Clark,* 128 F.3d 122, 124 (2d Cir.1997). This case falls squarely within the ambit of the general rule. It is clear from the record that the district court understood that it had the power to grant a downward departure, but that it just did not think Mejia's case was sufficiently unique to justify departing. We therefore hold that the district court's refusal to grant a downward departure is unappealable.

For the reasons set forth above, the appeal is dismissed insofar as Mejia seeks a review of the district court's refusal to grant a downward departure, and the judgment of the district court is hereby AFFIRMED.