**UNITED STATES of America,
Appellee,**

v.

**Ike OKAFOR, Defendant–Appellant.**

**Docket No. 01–1612.**

United States Court of Appeals,
Second Circuit.

Oct. 29, 2002.

Henry E. Mazurek, Law Office of Gerald L. Shargel, Esq., New York, NY, for Defendant–Appellant.

Marc L. Mukasey, Assistant United States Attorney (Christine H. Chung, Assistant United States Attorney, on the brief), for James B. Comey, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Present PIERRE N. LEVAL, GUIDO CALABRESI and BARRINGTON D. PARKER, JR., Circuit Judges.

**SUMMARY ORDER**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

Defendant-appellant Ike Okafor was arrested in December 1998 and subsequently indicted on charges of conspiracy to import heroin into the United States and export cocaine from the United States, in violation of 21 U.S.C. §§ 812, 952(a), 953(a), 960(a)(1), 960(b)(3), and of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Following Defendant's arrest, the government secured a search warrant for Defendant's home, where they found a kilogram

of heroin and a variety of incriminating documents.

After Defendant and his then-counsel, Cecillia Wang, participated in four proffer sessions, the government declined to offer Defendant a cooperation agreement, asserting that it did not believe he was providing complete and truthful information. In August 1999, at Defendant's request, Roy Kulcsar replaced Ms. Wang as Defendant's appointed counsel. Five months later, Mr. Kulcsar filed a motion seeking to suppress the evidence discovered in Defendant's home, on the ground that the government did not have probable cause for the search warrant. The district court denied the motion after a hearing in April 2000, finding that there was "overwhelming probable cause" for the warrant.

On the morning the trial was scheduled to begin, Defendant informed the court that he wished to plead guilty to both counts of the Superseding Indictment. After conducting a plea proceeding to ensure that Defendant understood the consequences of the plea, the court accepted Defendant's guilty plea, set a date for sentencing, and ordered Defendant to cooperate with the Probation Department in the preparation of the Pre–Sentence Report.

In late November 2000, Defendant against asked for new counsel, and Mr. Kulcsar was replaced by Henry Mazurek. Also in November, the Probation Office's Presentence Report was prepared. The report calculated Defendant's sentence as comprising (1) a base level of 36; (2) a four-level upward adjustment under U.S.S.G. § 3B1.1(a) due to Defendant's role as "an organizer and leader in the criminal activity"; (3) a two-level reduction under U.S.S.G. § 3E1.1(a) based on acceptance of responsibility; and (4) a criminal history category of I. This calculation yielded a sentencing range of 235 to 293 months' imprisonment.

Defendant objected to the report, complaining that (1) he was not a "leader" of the conspiracy and therefore that a four-level upward adjustment was unwarranted and he should receive a "safety-valve adjustment"; (2) he should have received a three-level downward adjustment for accepting responsibility rather than just a two-level adjustment; and (3) he should get an additional downward adjustment to put his sentence in line with those of his co-defendants, because the disparity of the sentences suggested "a malfunctioning of the Sentencing Guidelines." As to this last claim, Defendant alleged specifically that "he was prejudiced by the government's decision to manipulate the Guidelines by withholding or disclosing information to the sentencing court involving the different co-conspirators' offense conduct with the intent to influence the Guidelines calculations." The government disputed each of these claims, and in addition urged that Defendant be denied any downward adjustment for acceptance of responsibility.

The district court ordered an evidentiary hearing prior to sentencing to resolve these issues, but denied Defendant's request for a 90–day adjournment to allow time for Defendant to subpoena two government witnesses. The court heard testimony from an agent who had been involved in the proffer sessions, and from Ms. Wang, whose recollection of Defendant's candor and cooperation in the proffer sessions differed sharply from the agent's. At the conclusion of this testimony, the court found (1) that Defendant was a leader of the conspiracy, and therefore was both disqualified from claiming relief under the "safety valve" and subject to an upward adjustment for that role, and (2) that Defendant was entitled to a two-point (but not a three-point) downward adjustment for acceptance of responsibility, because "[w]hile the defendant did admit his

own involvement to a substantial degree, [the court was] not at all persuaded that he provided complete information."

Finally, the court denied Defendant's request for a downward departure based on the government's "sentencing manipulation" in the case. The court concluded that, even assuming arguendo that the government had manipulated the sentencing of the co-defendants, "[t]here is nothing to suggest that the charges here involve the manipulation of the guidelines with respect to this defendant."

In the end, the court's calculation of the Sentencing Guidelines resulted in a range of 188 to 235 months,[1] and the court imposed a sentence of 188 months. This appeal followed.

Defendant first argues that his conviction should be reversed based on ineffective assistance of counsel. Specifically, Defendant alleges that Mr. Kulcsar did not tell him that it might have been possible to enter a conditional plea—one that would have preserved his right to challenge the district court's denial of his suppression motion. Furthermore, Defendant maintains, Mr. Kulcsar erroneously told Defendant that if he wanted to plead guilty (in the absence of a plea agreement) he would have to plead to *all* overt acts and objects of the conspiracy included in the indictment, and not just to the heroin-related acts. Defendant argues that, but for the erroneous advice of his counsel, "he would

have at the very least entered a guilty plea sufficiently in advance of trial to earn the third point reduction available to him for acceptance of responsibility under the federal Sentencing Guidelines." Therefore, Defendant concludes, "there is a 'reasonable probability' that the outcome would have differed if Mr. Okafor had this information prior to the first day of trial."

Ineffective assistance claims are frequently more appropriately raised in § 2255 petitions, rather than on direct appeals, because "resolution of such claims often requires consideration of matters outside the record on direct appeal." *Billy–Eko v. United States*, 8 F.3d 111, 114 (2d. Cir.1993).[2] Deciding the issue on direct appeal is warranted, however, when "its resolution is beyond any doubt or to do so would be in the interest of justice." *United States v. Stantini*, 85 F.3d 9, 20 (2d. Cir.1996) (internal quotation marks and citation omitted). This is such a case.

Under the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant alleging ineffective assistance of counsel must demonstrate, first, that the attorney's representation "fell below an objective standard of reasonableness," *id.* at 687–88, 104 S.Ct. 2052, and second, that there is "a reasonable probability that, but for counsel's unprofessional errors, the re-

---

1. This was lower than the range first calculated in the PSR because, after the preparation of that report, Defendant and the government reached an agreement with respect to the amount of drugs for which the Defendant should be held responsible.

2. Of course, as we have repeatedly emphasized, "the *Billy–Eko* doctrine is discretionary." *United States v. Williams*, 205 F.3d 23, 35 (2d Cir.2000) (citation omitted). Moreover, we may be less inclined to require such claims to be brought on habeas today, given

the severe restrictions imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, on a defendant's ability to file more than one habeas petition. *See United States v. Leone*, 215 F.3d 253, 256–57 (2d Cir.2000). But "this does not mean that dismissal may not still be appropriate," *id.* at 257, and, even post-AEDPA, we have, on occasion, declined to hear ineffective assistance claims on direct appeal. *See, e.g., Williams*, 205 F.3d at 35.

sult of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Defendant here makes neither showing. There is no reason to think either that the government would have consented to a conditional plea, or that the district court would have allowed it. Moreover, Defendant's assertion that he would have pleaded guilty but for his counsel's erroneous advice is inconsistent with the reasons he gave the district court for the tardiness of his plea when he entered the plea.

In addition, Defendant challenges the judge's sentencing determination, arguing (1) that the court erred in concluding that he was a "leader or organizer" of the conspiracy; (2) that the court's explanation of its denial of the third point reduction for acceptance of responsibility was "ambiguous," and should be remanded for clarification; and (3) that the court erred in "refusing to recognize its authority to depart downward as a result of the government's sentencing manipulation in the case."

A district court's refusal to depart downward is generally not appealable. *United States v. Sharpsteen,* 913 F.2d 59, 62–63 (2d Cir.1990). However, "if the refusal to depart downward is based on a district court's mistaken view that it lacks the authority to depart, a defendant retains his right to appeal this denial." *Id.* at 63. Moreover, in determining whether aggravating circumstances exist to support an upward departure, district courts are granted wide discretion. *United States v. Palta,* 880 F.2d 636, 639 (2d Cir.1989) The factual findings upon which the district court bases its decision to depart are subject to the clearly erroneous standard, and we apply de novo review to issues of law. *United States v. Barone,* 913 F.2d 46, 50 (2d Cir.1990).

We have reviewed the district court's factual findings and do not find them to be erroneous. Further, we conclude that the court acted well within its discretion, and with a full and correct understanding of its authority to deviate from the Guidelines. We have considered all of Defendant's claims, including his argument that the court abused its discretion by refusing (a) to grant an adjournment of the evidentiary hearing and (b) to strike the testimony of Agent McSweeney, and find them meritless. We therefore AFFIRM the judgment of the district court.