**UNITED STATES of America,**
**Appellee,**

v.

**Yitshak LEVY, also known as Isaac Levy; Yosef Levy, also known as Yosef Levy; Defendants,**

**Asher Sudry, Isaac Jacob Sharvit, Defendants–Appellants.**

**Docket Nos. 03–1037(L), 03–1325(CON).**

United States Court of Appeals, Second Circuit.

Argued: June 8, 2004.

Decided: July 30, 2004.

260

Dawn M. Cardi, Dawn M. Cardi & Associates, New York, NY, for Defendant–Appellant.

Jeffrey A. Udell, Assistant United States Attorney for the Southern District of New York (Jonathan R. Streeter, Assis-

tant United States Attorney for the Southern District of New York, of counsel; David N. Kelley, United States Attorney for the Southern District of New York, on the brief), for Appellee.

Before: WINTER, JACOBS, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

Defendant–Appellant Isaac Jacob Sharvit ("Sharvit") appeals from the judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*) convicting the defendant of engaging in a conspiracy to distribute and possess with intent to distribute pills containing a detectable amount of methylendioxymethamphetamine ("MDMA"), commonly known as "ecstasy," in violation of 21 U.S.C. § 846 and of distributing and possessing with intent to distribute approximately 25,000 pills of MDMA in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C).

Sharvit presents several grounds that purport to demonstrate the ineffectiveness of his trial counsel, Valerie Amsterdam, who was recently indicted in the Eastern District of New York on charges that she, *inter alia,* made false representations to a federal judge in her professional capacity. In light of this new information and what appears to be not insignificant reliance on the part of the District Court on the reliability of an affidavit from Amsterdam, we find that this case cannot be decided on the record before us.

Sharvit does not present a compelling claim for relief in the absence of the criminal allegations against his trial attorney. However, given the breadth of Sharvit's claims of ineffectiveness, the serious criminal allegations against his trial counsel, the possibility that these recent revelations will suggest additional defects in the quali-

ty of Sharvit's trial representation, and the interest of this Court in ensuring the integrity of proceedings below, we remand the case for further factfinding in accordance with this opinion.

## BACKGROUND

At trial, the government presented evidence that Sharvit participated in a scheme, along with Asher Sudry, Yitshak Levy, and Yosef Levy to sell approximately 25,000 pills of ecstasy to a cooperating witness, named Nadav Dagan. More specifically, under the supervision of the Drug Enforcement Administration ("DEA"), Dagan negotiated with Yitshak Levy, over the course of several weeks, to purchase 25,000 pills that were to be supplied by others, including, it was determined, Isaac Sharvit. In a motion for a new trial, Sharvit claimed, *inter alia*, that his trial counsel, Valerie Amsterdam, failed to provide effective assistance of counsel because she: (1) consented to a joint trial with Asher Sudry, which led the jury to hear evidence that it would not otherwise have heard relating to Sudry's drug activity in Florida; (2) failed to challenge the government's English translation of audio tape recordings, which included conversations in Hebrew between Dagan and Yitshak Levy; (3) failed to hire a forensic expert to examine certain defective tape recordings; and (4) failed to inform Sharvit of his right to testify and denied him, over his objections, the opportunity to testify.

## I. THE DRUG TRANSACTION

The government presented evidence that on January 25, 2001, while under surveillance by law enforcement, Dagan drove to Pita Express, a restaurant in Manhattan. At Pita Express, Dagan met with Yitshak Levy and his brother Yosef Levy to effect their intended transaction. Yitshak Levy informed Dagan that they needed to await the arrival of the drugs from Brooklyn, and so Dagan waited outside the restaurant. A short time later, Yitshak Levy pointed to a green Cadillac parked in front of the restaurant that Levy said belonged to one of the suppliers for whom they were waiting. Dagan relayed the car's license plate information to law enforcement officers who subsequently determined that the car was registered to Sharvit. At trial, a law enforcement agent who surveilled the drug transaction identified Sharvit as present at the scene. The agent noted that Sharvit was peering over a newspaper conducting what the agent characterized as "countersurveillance" designed to determine if police were present. He also testified that Asher Sudry soon drove up to the restaurant, double parked his green Chevrolet Lumina, and engaged in conversation with Yosef Levy and Sharvit. The agent then saw Sharvit enter the driver's side of the Lumina and saw Yosef Levy enter the passenger side of the vehicle while Sudry remained outside of the car. Yosef Levy emerged from the car with a black bag containing the ecstasy and gave it to Dagan. The police then arrested Yitshak Levy, Yosef Levy, Sudry, and Sharvit.

According to DEA Special Agent Patrick Bagley, while Sharvit was in custody and after he was read his constitutional rights, Sharvit said to agents, "My friend had 180,000 pills and only got six years. I had 25,000 pills. How much time will I get?" Agent Bagley said he did not know the answer to the question, at which point Bagley says that Sharvit added "I heard it's one year for every thousand pills."

In Sharvit's defense, Amsterdam presented only one witness, Ethan Sharvit, the defendant's son, who testified to Sharvit's good character. Based on the government's witnesses, surveillance recordings, and telephone records strongly

suggesting that Sharvit served as the link between the Levys and Asher Sudry, the jury found Sharvit guilty of distributing and possessing with intent to distribute ecstasy and with conspiring to do the same.

## II. THE MOTION FOR A NEW TRIAL

On October 28, 2002, several months after the jury verdict, Sharvit dismissed his retained trial counsel, Valerie Amsterdam, and new counsel was appointed pursuant to the Criminal Justice Act. In a letter dated March 6, 2003, Sharvit moved to vacate the verdict on the ground that he did not receive effective assistance of counsel at trial in violation of his constitutional rights and submitted supporting affidavits from himself, his son, and his wife. Sharvit raised principally four claims that he continues to press on appeal.

### A. Audiotape Translations

First, Sharvit claims that Amsterdam should have challenged the accuracy of the government's Hebrew–English translations of audiotaped conversations, including conversations between Dagan and Yitshak Levy. An affidavit from Sharvit's wife states that she is fluent in English and Hebrew, spent many hours listening to the tapes and "noticed several discrepancies in these translations that [she] thought were material" to Sharvit's case. She also claims that she brought this to Amsterdam's attention and that Amsterdam agreed that they should obtain an independent translation; nevertheless Amsterdam never did so. On appeal, Sharvit suggests that this error could have been prejudicial had such a translation revealed an independent link between Sudry and one of the others who was arrested.

In Amsterdam's affidavit, she claims that she repeatedly sought help from Sharvit and his wife as to the translations but

that they could not identify "any significant or material mistranslations." The District Court relied on this representation as well as the fact that Sharvit's wife never identified any particular mistranslation to find that "there is nothing in the record here that states that there was any mistake in the translation ... so the record is uncontradicted that there was no material mistake in the translations."

### B. Audiotape Defects

Second, at trial, a DEA agent testified that part of two government audiotapes were damaged during copying. As a result, several minutes of conversation at the end of the drug transaction were lost. Prior to trial, Sharvit received repaired copies of the tapes, and John Jacobs, a colleague of Valerie Amsterdam who was then also representing Sharvit, requested an adjournment of trial to consult an audiotape expert to examine the original tapes for signs of tampering. This request was granted; however, Sharvit's counsel never actually called a forensic expert at trial nor was such an expert ever formally retained.

In his affidavit, Sharvit claims that he and Amsterdam "explicitly agreed" that an expert would be hired. Amsterdam denies this, stating in her affidavit that she and Jacobs consulted with Paul Ginsberg, an audio tape expert, who held the opinion that he would not be able to determine whether the tape damage was inadvertent or intentional. According to Amsterdam, she and Sharvit then made the tactical decision not to retain Ginsberg and instead to cross-examine the agent who damaged the tapes. The District Court credited Amsterdam's affidavit and also found that there was no evidence in the record that Sharvit was prejudiced by Amsterdam's decision.

## C. Sharvit's Right to Testify

Third, Sharvit claims that he was denied effective assistance of counsel because Amsterdam failed to advise him of his right to testify at trial on his own behalf and because she refused his requests to so testify. According to Sharvit's affidavit, a week before trial, "I insisted to Ms. Amsterdam, that I wanted to testify on my own behalf. The only testimony that we had in my defense regarding my 'confession' was wrong and I was the only person who could testify to what happened with the agent. I desperately wanted to testify specifically to redress the testimony by Agent Bagley." In Amsterdam's affidavit, she claims that Sharvit agreed with her strategic decision that Sharvit ought not testify. Specifically, she states that during preparation, Sharvit "had no answers to many significant questions, particularly those regarding the Government's evidence of telephone records," and that by testifying, Sharvit would risk an enhancement for obstruction of justice and a corresponding risk of precluding safety valve relief if the court found his testimony incredible. The District Court noted the factual discrepancy between the two affidavits but determined that, in any event, Sharvit was not prejudiced by any potential error related to the fact that he did not testify at trial.

## D. Joinder of Asher Sudry

Lastly, Sharvit claims that his trial counsel was constitutionally defective for failing to object to a joint trial with Asher Sudry. Amsterdam concedes in her affidavit that "the Government offered Mr. Sharvit the option of being tried jointly with or separately from Sudry." She also admits that Sharvit initially indicated a preference for an earlier trial date that would not have included Sudry. She claims, however, that Sharvit ultimately agreed with her strategic decision to go to trial jointly because of the possibility that Sudry would offer exculpatory evidence with respect to Sharvit and that "Sharvit would benefit from looking less culpable before the jury than Sudry." Sharvit claims that Amsterdam's judgment fell below objective professional standards, because her decision to permit a joint trial resulted in substantial testimony at Sharvit's trial concerning a prior ecstasy sale transacted by Sudry that would not have been introduced were Sharvit tried alone. The government concedes that approximately 14% of the six-day trial testimony concerned Sudry's prior drug transaction, and Sharvit suggests that the percentage was much higher than that.

The District Court stated that it takes "into account counsel's representation as to the tactical reasons for the decision to go to trial with Mr. Sudry." The court also noted that "the jury was instructed multiple times when that evidence [of Sudry's prior drug transaction] was coming in that it should be considered only as to Mr. Sudry's state of mind, and they were instructed on that item again during the main charge at the end of the case." Based on the limiting instructions to the jury, the court stated that Sharvit was not prejudiced by the decision to proceed to trial jointly.

On May 21, 2003, the District Court heard argument as to all of Sharvit's ineffective assistance claims, construed his motion as a motion for a new trial under Federal Rule of Criminal Procedure 33, and denied it. Sharvit was sentenced principally to a prison term of 63 months, to be followed by three years of supervised release.

## III. THE CRIMINAL ALLEGATIONS AGAINST VALERIE AMSTERDAM

Sharvit brought a timely appeal and filed his opening brief on February 4, 2004.

The government subsequently filed its response brief on April 14, 2004. In a motion to this Court dated May 13, 2004, Sharvit sought leave to file an out-of-time reply brief. *See* FED. R. APP.P. 31(a) (requiring ordinarily that "a reply brief be filed within 14 days after service of the appellee's brief"). The motion indicated that the government consented to the late filing and, on May 24, 2004, we granted the motion. In his reply brief, Sharvit states that Valerie Amsterdam was indicted on April 22, 2004. The five-count indictment states, *inter alia*, that Amsterdam, roughly between June 2003 and November 2003, conspired to defraud the United States by submitting fraudulent applications for appointment of counsel under the Criminal Justice Act. *See* Indictment of Valerie Amsterdam in the United States District Court for the Eastern District of New York (docket # 2:04–cr–00384–ADS–ALL). The indictment also states that she made false statements to a United States District Court and to criminal investigators and that she attempted to dissuade another person from making certain communications to law enforcement. *Id.* In addition, Sharvit cites an April 23, 2004 article in the New York Times which refers to allegations that Amsterdam abused prescription drugs and cocaine and laundered money on behalf of a client. The government did not dispute these representations at oral argument nor did it challenge their presentation to this Court. Sharvit asks us to vacate his conviction or, in the alternative, to remand for an evidentiary hearing.

### DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. We evaluate a claim that defense counsel provided ineffective assistance in violation of the Sixth Amendment under the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that test, Sharvit "must show both that his counsel's performance was deficient as measured by objective professional standards, and that this deficiency prejudiced his defense." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000); *see also Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (1984); *Chang v. United States*, 250 F.3d 79, 84 (2d Cir.2001). To show prejudice, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir.1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

Whether a defendant's representation "'violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed *de novo*.'" *Triana v. United States*, 205 F.3d 36, 40 (2d Cir.2000) (quoting *United States v. Blau*, 159 F.3d 68, 74 (2d Cir.1998)), *cert. denied*, 531 U.S. 956, 121 S.Ct. 378, 148 L.Ed.2d 292 (2000). We review the District Court's denial of a request for an evidentiary hearing for abuse of discretion. *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir.1995); *cf. Chang*, 250 F.3d at 82 (reviewing for abuse of discretion the denial of an evidentiary hearing on a claim of ineffective assistance of counsel brought under 28 U.S.C. § 2255).

When a criminal defendant claims on direct appeal that his trial counsel was constitutionally ineffective, we have three principal options. "[W]e may '(1) decline

to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 [motion]; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us.'" *United States v. Doe,* 365 F.3d 150, 152 (2d Cir.2004) (alteration in original) (quoting *United States v. Leone,* 215 F.3d 253, 256 (2d Cir.2000)).

■ In this case, we cannot decide the appeal on the record before us. Generally, in the context of ineffective assistance claims, attorney affidavits cannot be said to be completely unbiased—attorneys understandably have an interest in maintaining their reputations and avoiding civil liability. Amsterdam's indictment, however, which alleges fraudulent conduct in her dealings with the federal judiciary and the government, casts a dark shadow over the reliability of her affidavit, distinguishing it significantly from attorney affidavits in more typical ineffective assistance claims. The indictment raises significant questions as to the reliability of Amsterdam's affidavit, and we suspect that the District Court might have considered the collection of affidavits somewhat differently in the light of recent events.

While the District Court deemed purported instances of ineffective assistance to be non-prejudicial, the court's repeated reliance on Amsterdam's affidavit, as recounted above, demonstrates that the District Court's prejudice analysis was intertwined, to some degree, with consideration of the credibility of the affidavits. For example, the District Court stated, "I don't find in the affidavits a sufficient explanation of the evidence in the case so as to make me believe that the outcome would have been different." In any event, based on our own review of the record, we believe additional factfinding is necessary as revelations concerning Amsterdam's indictment may suggest additional areas where her professional obligations to Sharvit fell short of constitutional requirements. We emphasize, of course, that Amsterdam enjoys a presumption of innocence that is in no way belittled by our efforts to protect the rights of her former client.

Lastly, we turn to the method by which Sharvit ought to obtain further factfinding. In *Massaro v. United States,* 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), the Supreme Court held "that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." The Court also noted that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Id.* at 504, 123 S.Ct. 1690. The Court took this position based largely on the view that the district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." *Id.* at 505, 123 S.Ct. 1690. Whether a court of appeals remands to a district court or defers a claim for habeas review, however, factfinding will occur in the district court. Thus, the Court "has not squarely addressed ... the relative merits of resolving ineffectiveness claims by way of remand and direct review or eventual section 2255 motion and appeal." *Doe,* 365 F.3d at 153.

While we have expressed a "baseline aversion to resolving ineffectiveness claims on direct review," *United States v. Morris,* 350 F.3d 32, 39 (2d Cir.2003) (internal quotation marks omitted), that general preference is largely rooted in the difficulty a court of appeals faces when resolving an ineffective assistance claim without the benefit of district court factfinding. The rationale is less applicable where, as here,

a defendant has already presented a claim of ineffective assistance to the district court prior to direct appeal. In addition, we recognize the potential unfairness to Sharvit if, through no fault of his own, he was represented by trial counsel who did not appreciate her professional responsibilities. As the Supreme Court noted in *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." We believe that the unique circumstances of Sharvit's appeal entitle him to additional factfinding, and we exercise our discretion to remand the case now rather than require Sharvit to await a collateral proceeding. *See, e.g., Leone,* 215 F.3d at 257 ("[W]e choose to exercise our discretion to remand to the district court for further fact-finding rather than to dismiss the appeal and force the appellant to use up his only habeas petition."); *United States v. Tarricone,* 996 F.2d 1414, 1417, 1425 (2d Cir.1993) (remanding on direct appeal of a conviction in order to hold "an evidentiary hearing to develop a factual record on the issue of ineffective assistance" where the ineffective assistance claim was raised below in a motion for a new trial).

## CONCLUSION

For the reasons stated above, we hereby REMAND this case for further proceedings in accordance with this opinion.