18-3789-cr
*United States v. Cureton*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-two.

PRESENT:  SUSAN L. CARNEY,
JOSEPH F. BIANCO,
MYRNA PÉREZ,

        *Circuit Judges*.

_____

United States of America,

        *Appellee*,

      v.                                                                          18-3789-cr

James Cureton, AKA Jayquan, AKA Q,

        *Defendant-Appellant*.

_____

FOR DEFENDANT-APPELLANT: ZACHARY A. MARGULIS-OHNUMA (Benjamin Notterman, *on the brief*), ZMO Law PLLC, New York, NY.

FOR APPELLEE: BENJAMIN WEINTRAUB, Assistant United States Attorney (Jo Ann M. Navickas, Jennifer Sasso, Assistant United States Attorneys, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant James Cureton appeals from a judgment of conviction and sentence, entered on December 20, 2018. Following a three-day jury trial, Cureton was convicted of using a firearm to commit murder in relation to a conspiracy to distribute heroin, cocaine, cocaine base, or marijuana in violation of 18 U.S.C. § 924(j)(1) (Count One); drug-related murder in furtherance of a conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 848(e)(1)(A), (a) (Count Two); and possession of heroin with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count Four). Cureton moved for a new trial under Federal Rule of Criminal Procedure 33, arguing that his trial counsel was ineffective. The district court, following an evidentiary hearing, denied his motion and subsequently sentenced him to a total of 26 years' imprisonment.

Counts One and Two related to the murder of Raymond Brooks in Albany on October 31, 2009. With respect to these charges, it was undisputed at trial that, on the day of the murder, Cureton drove with cooperating witness Norbert Grigger from Staten Island to Albany, entered Brooks's apartment with Grigger when Grigger shot and killed Brooks, and then drove back to Staten Island with Grigger. The uncontroverted evidence at trial also demonstrated that Cureton had sold drugs with Grigger a few weeks before the murder and participated in an armed robbery on Long Island with Grigger. The government offered evidence at trial to establish, among other things, that: (1) Cureton was part of a large-scale drug conspiracy operating in and around New York, along with Grigger and Brooks; (2) Cureton and Grigger conspired to murder, and ultimately

2

murdered, Brooks in his Albany apartment because Brooks failed to repay a drug debt that he owed the operation; and (3) as part of his role in the murder with Grigger, Cureton brought cleaning solution in a spray bottle to Brooks's apartment to eliminate evidence of the crime.

Defense counsel unsuccessfully argued to the jury, among other things, that Cureton did not know that Grigger was planning the Brooks murder beforehand, and Grigger was duping Cureton so that Cureton would be blamed for the murder. Moreover, defense counsel argued that the murder was unrelated to any drug debt owed to the Cureton drug operation, but rather was committed by Grigger in exchange for $25,000 from another individual who wanted Brooks killed, as part of a plan of which Cureton was completely unaware.

On appeal, Cureton challenges his conviction on Counts One and Two, arguing that he was denied effective assistance of counsel.[1] Cureton makes clear that, in light of the government's evidence at trial, he "do[es] not quarrel with trial counsel's decisions to concede that Cureton was present for the shooting or that he had a prior drug relationship with Grigger." Appellant's Br. at 4. Instead, Cureton contends that trial counsel did not sufficiently "address the government's evidence that Cureton knew ahead of time that cooperating witness Norbert Grigger planned to murder Brooks," *id.*, and asserts that this failure permeated defense counsel's performance throughout the trial.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

---

[1] Cureton does not challenge his sentence or his conviction on Count Four.

3

**DISCUSSION**

"Whether a defendant's representation violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed *de novo*." *United States v. Kourani*, 6 F.4th 345, 353 (2d Cir. 2021) (quoting *United States v. Levy*, 377 F.3d 259, 264 (2d Cir. 2004)).

To evaluate an ineffective assistance of counsel claim, we utilize the standard that the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant making an ineffective assistance of counsel claim must demonstrate both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. Failure to establish either component is sufficient to defeat a defendant's claim. *Id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). Analysis under each prong requires consideration of trial counsel's alleged errors cumulatively, rather than in isolation. *See Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. We have emphasized that this presents a "high bar" for defendants to meet. *United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021) (quoting *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020)). "If the attorney made a strategic choice after thoughtful consideration, that decision will be 'virtually unchallengeable.'" *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005)). To satisfy the prejudice prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 694).

On appeal, Cureton provides a litany of reasons as to why he believes his trial counsel was ineffective—some arguments are broad, others are quite specific. The arguments can be placed in three categories—namely, defense counsel's alleged failure to: (1) conduct an adequate pretrial investigation of potential witnesses; (2) make objections to inadmissible testimony and effectively cross-examine cooperating witness Grigger; and (3) deliver a competent closing argument. As set forth below, these arguments take issue with defense counsel's trial strategy, and the district court correctly concluded that Cureton failed to overcome the "strong presumption" that his trial counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

I.     The Pretrial Investigation

Cureton argues that trial counsel's performance was deficient because his attorneys failed to conduct an adequate pretrial investigation, including by not interviewing potential defense witnesses, such as: (1) Brittany Satterwhite, who Cureton asserts would have testified that she did not see Cureton carrying the spray bottle—either before or after the murder—contradicting testimony by government witnesses; (2) Bruce Lennard, an assistant district attorney who prosecuted Cureton in state court on weapons charges, and who Cureton believes would have contradicted Curtis Braswell's trial testimony that, at a state prosecutor's instruction, he had omitted details regarding the spray bottle from prior testimony; and (3) Thomas Dirden, who had told law enforcement that Grigger admitted to killing Brooks over a marijuana debt, and thus could have undermined the evidence on Count Two, which was predicated upon the murder being in furtherance of trafficking in cocaine-based drugs.

5

We afford substantial deference to defense counsel's decisions with respect to which witnesses to call at trial. *See, e.g.*, *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess." (citation omitted)); *United States v. Caracappa*, 614 F.3d 30, 48 (2d Cir. 2010) ("Monday-morning quarterbacking is not a sport encouraged by the laws governing ineffective assistance claims." (quoting *United States v. Eppolito*, 436 F. Supp. 2d 532, 564 (E.D.N.Y. 2006))). Although Cureton faults his counsel for not interviewing the witnesses before making these strategic decisions, it is not ineffective assistance for defense counsel to forgo a witness interview if counsel has reasonably determined that, even if the witness would testify as the defendant hopes, there are strategic reasons not to call that witness. *See Greiner*, 417 F.3d at 321 (stating that if counsel had "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (quoting *Strickland*, 466 U.S. at 691)); *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) ("[E]ven strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." (citing *Strickland*, 466 U.S. at 690–91)).

Having analyzed the record, including the declarations of trial counsel explaining their decisions with respect to potential defense witnesses, we find that that trial's counsel's decisions fall within the range of reasonable strategic decisions. For example, Satterwhite's potential testimony regarding the lack of a spray bottle in Cureton's hand before or after he entered the apartment, that testimony would not have addressed the uncontroverted evidence (based upon Cureton's plea allocution in state court to a firearm charge) that, about an hour before the murder,

in the vicinity of the Brooks's apartment, Cureton was aware of and knowingly attempted to possess an operable firearm. Moreover, although there was other evidence that Cureton possessed the spray bottle *after* the murder, there was no corroboration of Grigger's testimony that Cureton also had the spray bottle *before* the murder. Therefore, it was a reasonable strategy to not pursue Satterwhite's anticipated testimony and risk calling further attention to the spray bottle and instead address that particular piece of evidence by attacking Grigger's overall credibility.[2]

Similarly, there were strategic reasons not to interview ADA Lennard as a potential witness to rebut Braswell's claim, when impeached on cross-examination about his failure to mention the spray bottle in the state grand jury, that a state prosecutor instructed him to omit it. As trial counsel's post-trial declaration reflects, trial counsel was concerned—and reasonably so—that calling ADA Lennard to impeach that portion of Braswell's testimony was extremely dangerous because ADA Lennard could have highlighted Cureton's allocution in state court to possessing a gun within an hour of the murder in the vicinity of the victim's residence. Instead, defense counsel decided that the better course was to rely upon the facial implausibility of Braswell's claim that a state prosecutor would instruct him to omit relevant testimony before a grand jury, thereby undermining Braswell's trial testimony that Cureton carried the spray bottle. As with Satterwhite, trial counsel determined that further focus on the spray bottle would distract from their trial theory that Grigger had orchestrated the murder in exchange for a $25,000 bounty that was unrelated to

---

[2] The government also points, as the district court did, to trial counsel's additional concern that they would be ethically constrained from eliciting Satterwhite's testimony that Cureton did not possess the spray bottle after the murder because Cureton had told trial counsel that he, in fact, had the spray bottle after the murder. Although Cureton disputed that he made such an admission to his trial counsel, the district court conducted an evidentiary hearing on this issue and found that "Cureton admitted to trial counsel that he had a spray bottle in his hands after the murder." Special App'x at 18. However, we need not address this issue because we conclude, separate from any ethical concerns that trial counsel articulated to the district court about Satterwhite's anticipated testimony, their strategic reasons for not pursuing Satterwhite as a defense witness were sufficient to satisfy the objective reasonableness standard under *Strickland*.

any drug activity. *See* App'x at 1128 (declaration of defense counsel explaining that "Curtis Braswell's failure to mention the spray bottle in the state grand jury, when testifying about what he observed when James Cureton exited [the victim's residence] is a factor that neither proved [n]or disproved the defense narrative that Norbert Grigger orchestrated the murder of Raymond Brooks to extract $25,000 in cash from [another individual]").

That same strategic decision explained why the Dirden interview was not pursued. As an initial matter, Dirden's testimony that Grigger attributed the murder to a marijuana dispute would have bolstered the government's case on Count One, even if it weakened the case on Count Two. It would have also undermined trial counsel's broader trial theory—that could have resulted in exoneration on Counts One and Two—that Grigger murdered Brooks for money and not in connection with any drug dispute.

In short, with respect to trial counsel's pretrial decisions (including which witnesses to interview), Cureton has not overcome the "strong presumption" that such decisions "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (quoting *Strickland*, 466 U.S. at 689).

II.      Objections and Witness Examinations

Cureton also argues that trial counsel's performance was deficient because trial counsel failed to object to various portions of testimony by government witnesses and failed to conduct a reasonable cross-examination of Grigger. We again conclude that trial counsel's conduct in these regards did not fall below an objective standard of reasonableness under *Strickland*.

As we have explained, "decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics,' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (citation omitted)

8

(first quoting *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997); then quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)). We find no such exceptional circumstances present here. For example, Cureton questions trial counsel's failure to object to testimony about a perceived death threat to a witness's girlfriend. As the district court noted, the witness characterized the incident as a "sarcastic threat" by Cureton, and the district court quickly cut off an unprompted reference to death threats. Special App'x at 11 (internal quotation marks omitted). It was well within reasonable trial strategy for trial counsel not to object to such testimony, with the attendant risk of highlighting it, especially where the witness had independently testified to an explicit death threat Cureton made directly to the witness about Braswell, who was the witness's brother.

With respect to the cross-examination of Grigger, Cureton argues that trial counsel failed to impeach Grigger as to (1) the extent of the pressure on him to testify consistent with the government's view of the case, and (2) the fact that Grigger changed his story after Cureton filed a *pro se* motion that denied prior knowledge of the murder. However, the record reveals that trial counsel did impeach Grigger on his cooperation with the government and the benefits he hoped to reap as a result. Furthermore, it was well within reasonable trial strategy for defense counsel to determine that it would not have been advantageous to focus more closely on the fact that Grigger did not mention Cureton showing him a gun or carrying a spray bottle in his early proffers— proffers that occurred years before trial and were focused on entirely different individuals— especially because Cureton had admitted to the gun possession in his state allocution. In sum, there is no basis to conclude that trial counsel lacked a "strategic or tactical justification" for their approach to impeaching Grigger. *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)); *see also United States v. Nersesian*,

9

824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature.").

III.    The Summation

Finally, Cureton contends that trial counsel's closing argument was so deficient as to render it constitutionally inadequate. In particular, Cureton claims that his trial counsel failed to set forth any theory of defense and was deficient in failing to make several specific arguments. We find these arguments unpersuasive.

Judicial review of a defense attorney's summation is "highly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). "[D]eference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Id.* Here, trial counsel's summation adequately presented a legitimate defense theory consistent with the one advanced throughout the trial—that Grigger "needed money and he contrived this story to kill [Brooks] for $25,000" and that Cureton had no prior knowledge of Grigger's plan to kill Brooks that day. App'x at 904–05. Additionally, trial counsel used their summation to focus on discrediting Grigger, who was the government's most important witness, for his "lifetime of lying, scheming, violence, and manipulation of the highest order." App'x at 901.

In short, for substantially the reasons set forth in the district court's well-reasoned and thorough decision, we conclude that trial counsel's summation was "a reasonable summation because it focused on discrediting the witness on whom the government's entire case hung, while at the same time, arguing that the murder was not reasonably foreseeable to Cureton." Special App'x at 33; *see also Yarborough*, 540 U.S. at 6 (deciding in summation which "issues to sharpen and how best to clarify them are questions with many reasonable answers").

10

*    *    *

We have considered Cureton's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11