19-4292-cr
*United States v. Kourani*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2020

No. 19-4292-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

ALI KOURANI, AKA ALI MOHAMED KOURANI, AKA JACOB LEWIS, AKA
DANIEL,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: APRIL 13, 2021
DECIDED: JULY 27, 2021

Before: KEARSE, CABRANES, AND POOLER, *Circuit Judges*.

This case presents five questions: (1) whether the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) erred in denying Defendant-Appellant Ali Kourani's motion to suppress confessions he made during a series of interviews with the Federal Bureau of Investigation; (2) whether the District Court erred in denying Kourani's motion claiming ineffective assistance of counsel; (3) whether the District Court erred in declining to provide Kourani's requested jury instructions; (4) whether the evidence adduced at trial was sufficient to support Kourani's conviction; and (5) whether Kourani's sentence of 480 months of imprisonment was procedurally and substantively unreasonable. For the reasons stated in this opinion, we hold that the District Court did not err in its pretrial and trial rulings and that the evidence adduced at trial was sufficient to support Kourani's conviction. Further, we hold that Kourani's sentence was not unreasonable. Accordingly, we **AFFIRM** the District Court's December 18, 2019 judgment of conviction.

Judge Pooler dissents in part in a separate opinion.

─────────────

PETER J. TOMAO, Garden City, NY, *for Defendant-Appellant*.

Ali Kourani, *pro se*, New York, NY, *for Defendant-Appellant*.

2

EMIL J. BOVE III (Amanda L. Houle and Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney, Southern District of New York, New York, NY, *for Appellee.*

———————

JOSÉ A. CABRANES, *Circuit Judge*:

This case presents five questions: (1) whether the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) erred in denying Defendant-Appellant Ali Kourani's motion to suppress confessions he made during a series of interviews with the Federal Bureau of Investigations ("FBI"); (2) whether the District Court erred in denying Kourani's motion claiming ineffective assistance of counsel; (3) whether the District Court erred in declining to provide Kourani's requested jury instructions; (4) whether the evidence adduced at trial was sufficient to support Kourani's conviction; and (5) whether Kourani's sentence of 480 months of imprisonment was procedurally and substantively unreasonable. For the reasons stated in this opinion, we hold that the District Court did not err in denying Kourani's motions or in declining to provide the requested instruction and that the evidence at trial was sufficient to support Kourani's conviction. Further, we hold that Kourani's sentence was not unreasonable. Accordingly, we **AFFIRM** the December 18, 2019 judgment of conviction of the District Court.

## I. BACKGROUND[1]

In 2000 Defendant-Appellant Ali Kourani joined Hizballah,[2] a Lebanon-based terrorist organization, and attended a 45-day military-style boot camp in the Bekaa Valley in Lebanon. His attendance was made possible by the sponsorship of a relative, who was a prominent Hizballah member. At the camp, Kourani was trained in military tactics and the use of weapons, including AK-47s and rocket-propelled grenade launchers.

In 2003, Kourani entered the United States on an immigrant visa, disclaiming any connection to a terrorist organization in his visa application despite his ties to Hizballah. Kourani obtained legal permanent resident status.

In 2008, Kourani traveled to Lebanon and became a member of the Islamic Jihad Organization ("IJO"), a component of Hizballah focused on operations outside Lebanon—including the commission of terrorist attacks and related intelligence-gathering activities.

The IJO assigned Kourani to a handler, an individual known as "Fadi." In their first meeting, Fadi taught Kourani the "Golden

---

[1] The following statement of facts is drawn from the record on appeal, which includes the transcript of Kourani's trial (App'x Vol III-VII).

[2] "Hizballah" is also spelled "Hezbollah" in the record. We use the spelling Hizballah for consistency with the indictment and the list of designated foreign terrorist organizations maintained by the United States Department of State ("State Department"). *See* Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52,650 (Oct. 8, 1997).

Rule"—the less he knew about the IJO, the better. In other meetings, Kourani also received training in other useful skill areas, including how to resist interrogation.

Back in the United States, Kourani continued to cultivate a cover identity for his activities as an IJO "sleeper" operative, obtaining a bachelor's degree in biomedical engineering from the City College of New York in 2009 and a master's degree in business administration from the Keller Graduate School of Management in New York in 2013.

Kourani had been instructed by Fadi to obtain United States citizenship and a United States passport as soon as possible. In August 2008, Kourani applied for naturalization, again disclaiming any ties to Hizballah. His application was approved and Kourani was sworn in as a United States citizen on April 15, 2009. He applied for a United States passport that same day.

Shortly after obtaining his passport, on May 3, 2009, Kourani traveled to Guangzhou, China, which is a manufacturing location of commercial ice packs known to be used by the IJO to build ammonium nitrate explosives.[3] Kourani's travels did not end there. In 2011, Kourani returned to Lebanon for military training. As in his 2008 trip, in this latest sojourn in Lebanon, Kourani received training in the use of weapons and tactics. In other sessions, Kourani was trained in resisting interrogation.

---

[3] App'x at 816.

Following his return to the United States, Kourani continued to receive instructions from Fadi regarding travel to conduct IJO operations. In 2012, Kourani married a Canadian citizen named Lila Abadi, whose family included Hizballah militia members based in Lebanon. After the marriage, Fadi asked Kourani about carrying correspondence to IJO operatives based in Canada because his travel to and from Canada would not appear suspicious in light of his marriage to a Canadian woman. Then, in 2013, at Fadi's instruction, Kourani applied for and obtained a United States passport card, which could be used for entry into the United States at the land border crossings. That way, if his United States passport were seized, he could use his Lebanese passport to fly to Mexico or Canada and use the United States passport card to cross into the United States.

Throughout this period, from 2008 to 2015, Kourani also conducted intelligence-gathering missions for the IJO in the United States and Canada at the direction of Fadi. Kourani conducted surveillance of: JFK International Airport and Toronto Pearson Airport, an armory facility in Manhattan, a National Guard outpost in Manhattan, Secret Service offices in Brooklyn, and 26 Federal Plaza—the FBI's New York headquarters located across the street from the federal courthouse in Foley Square. Fadi asked Kourani to identify commercial locations where weapons could be stockpiled and to identify individuals who could procure weapons. Kourani was instructed to obtain tactical gear, including night-vision goggles, drones, and thermal imaging devices. Fadi also told Kourani to collect information about Israeli businessmen living in New York with ties to

6

the Israeli Defense Forces—so that the IJO could target them for recruitment or assassination.

Kourani's activities attracted the notice of the FBI, which began to monitor his electronic and phone communications pursuant to a court order in 2014. On April 1, 2016, FBI Special Agent ("SA") Gary Battista (accompanied by another special agent and a member of an unnamed intelligence agency) approached Kourani at a Starbucks. They all proceeded to a McDonald's next door where SA Battista offered Kourani an "opportunity . . . to enter into a relationship with the U.S. government," and that, if he took the opportunity, he would be able to "provide college education for his kids, healthcare for his family, [and] pursue any career that he wanted . . . ."[4] Because the McDonald's was crowded, with the risk of being overheard, Kourani and the agents agreed to meet again later that day. At that later meeting, Kourani denied being a member of Hizballah. Over a series of subsequent meetings, Kourani rejected overtures from the agents— declining offers of financial compensation as well as an offer to look at an example of a proffer agreement.

On July 15, 2016, Kourani returned to Lebanon with his wife and their children. There, Kourani visited the United States Embassy in Beirut to seek assistance with a familial dispute, and his United States passport was taken by the State Department. SA Battista learned that Kourani had gone to the United States Embassy in Beirut, and traveled to meet with him, along with another SA, Joseph Costello, and a

---

[4] App'x at 1149.

7

member of an unnamed intelligence agency. At the meeting, which took place on August 9, 2016, SA Battista and SA Costello again sought Kourani's cooperation, which he declined to provide, again denying his membership in Hizballah. Kourani was given his United States passport at the end of the meeting and he returned to the United States.

Kourani's interactions with the FBI ceased until March 2017, when Kourani's attorney, Mark Denbeaux, contacted the FBI through a public access line. SA Keri Shannon and SA Costello spoke with Denbeaux by phone that same month. Kourani and Denbeaux then met with the agents five times at Denbeaux's office at the Seton Hall University School of Law, where Denbeaux was a professor. [5] During those meetings, Kourani admitted to many of his activities on behalf of the IJO. During the fifth and final meeting with the agents, Kourani admitted that he had previously lied to the agents about the timing of his recruitment to the IJO because he was worried it would affect his citizenship status. SA Shannon and SA Costello then terminated the interview because, in their view, Kourani was not being forthcoming and refused to answer certain questions regarding his involvement with Hizballah.

A sealed criminal complaint against Kourani was filed on May 31, 2017, and he was arrested pursuant to a warrant on June 1, 2017. A grand jury returned an indictment on June 28, 2017, charging Kourani

---

[5] Kourani, Denbeaux, and the agents met on March 23, April 3, April 5, April 14, and April 26, 2017.

with eight counts of terrorism-related offenses based on his conduct between 2002 and September 2015.

After a jury trial, Kourani was convicted of providing and conspiring to provide material support to Hizballah, in violation of 18 U.S.C. § 2339B (Counts One and Two); receiving and conspiring to receive military-type training from Hizballah, in violation of 18 U.S.C. § 2339D (Counts Three and Four);[6] contributing and conspiring to contribute services to Hizballah, in violation of 50 U.S.C. § 1705(a) (Counts Six and Seven); and unlawful procurement of citizenship or naturalization to facilitate an act of terrorism, in violation of 18 U.S.C. § 1425(a) (Count Eight).[7] Kourani was sentenced principally to 480 months of imprisonment. Kourani now appeals from a judgment of conviction entered on December 18, 2019.

## II.    DISCUSSION

On appeal, Kourani challenges: (1) the District Court's denial of his motion to suppress his confessions during the 2017 interviews with FBI agents; (2) the District Court's failure to remedy the purported ineffective assistance provided by his counsel; (3) the District Court's failure to provide his requested jury instructions; (4) the sufficiency of the evidence underpinning his conviction; and (5) the reasonableness

---

[6] Kourani's 2011 trip to Lebanon for military training provided part of the basis for Counts Three and Four.

[7] Count Five, conspiracy to use and carry machine guns and destructive devices during and in relation to Counts One through Four, in violation of 18 U.S.C. § 924(o), was withdrawn by the Government and dismissed by the District Court after trial.

of his sentence of 480 months of imprisonment. We consider each challenge in turn.

## A. Denial of Motion to Suppress Confessions

Kourani claims that the District Court erred in denying his motion to suppress the confessions made during the 2017 interviews with the FBI. We do not agree.

"On appeal from a challenged suppression order, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*."[8] Incriminating statements made in non-custodial settings are inadmissible if the statements were not made voluntarily—that is, if the defendant's "will was overborne."[9] To prevail on a claim of involuntariness premised on "trickery and deception, [a defendant] must produce clear and convincing evidence that the [government] agents affirmatively misled [him] as to the true nature of [their] investigation."[10] We evaluate voluntariness based on the "totality of the circumstances," including "(1) the characteristics of the accused,

---

[8] *United States v. Haak*, 884 F.3d 400, 408 (2d Cir. 2018).

[9] *United States v. Corbett*, 750 F.3d 245, 253 (2d Cir. 2014) (internal quotation marks omitted); *see also Dickerson v. United States*, 530 U.S. 428, 433-34 (2000) (tracing the evolution of the "due process voluntariness test" to its modern formulation, which examines "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." (internal quotation marks omitted)).

[10] *United States v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992) (internal quotation marks omitted).

(2) the conditions of interrogation, and (3) the conduct of law enforcement officials."[11]

In his counseled brief, Kourani argues that his admissions to the FBI were involuntary because (1) he only spoke to the FBI agents on a condition of confidentiality; and (2) the agents gave Kourani and his counsel, Denbeaux, the impression that they were adopting the position that Kourani "face[d] no prosecution" by failing to object to a memorandum that Denbeaux presented to them prior to the April 3, 2017 interview.[12]

All of these arguments are unavailing when evaluated under the totality of the circumstances of the 2017 interviews.

First, Kourani's "characteristics" favor a finding that his statements were voluntarily made. At the time of his 2017 meetings with the FBI, he was an adult who had graduated from college and who held a master's degree in business administration. Further,

---

[11] *Haak*, 884 F.3d at 409 (internal quotation marks omitted).

[12] App'x at 650. In a *pro se* supplemental brief, which we granted Kourani leave to file, Kourani further argues that the Government's promise of confidentiality included a promise of immunity, which induced his self-incriminating statements, rendering them involuntary and inadmissible. Kourani also claims that his statements were not voluntary in light of the "duress" he was under at the time of his interviews with the FBI because he was unemployed, living with a relative, estranged from his children, and worried about his safety. Kourani finally asserts that the Government improperly pressured him prior to the March and April 2017 meetings by contacting his relatives and employer, denying benefits to his relatives, temporarily confiscating his United States passport in Lebanon, and subjecting him and his family to secondary screenings at airports.

11

Kourani had already previously talked to—and refused to cooperate with—the FBI.[13] Second, the conditions of the 2017 interviews were not coercive. The interviews took place at a conference room at Seton Hall University, where Denbeaux worked and to which Kourani traveled on his own. Kourani was represented by Denbeaux at those meetings, except during a portion of one meeting where Kourani requested to speak to SA Shannon alone. During the interviews, Kourani also took frequent breaks to consult privately with Denbeaux, and Kourani exercised his right to decline to answer certain questions from the agents.[14] Third, the conduct of the FBI agents was not coercive. The agents were dressed in business-casual attire and did not display firearms.

Nor did the agents' purported promise of immunity render Kourani's statements involuntary. At the outset, our precedent dictates "that the presence of a direct or implied promise of help or leniency has not barred the admission of a confession where the totality of the circumstances indicates that it was the product of a free and independent decision."[15] Moreover, we cannot hold that the

---

[13] *Cf. United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995) (considering defendant's familiarity with police questioning and "maturity, education [and] intelligence").

[14] *See Green v. Scully*, 850 F.2d 894, 902 (2d Cir. 1988) (explaining that relevant facts include "the place where an interrogation is held," "the length of detention," and the "presence or absence of counsel," which "is a significant condition because counsel can assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process" (internal quotation marks omitted)).

[15] *Id.* at 901.

District Court clearly erred when it concluded that the agents did not implicitly adopt Denbeaux's memorandum of the meetings, in which Denbeaux had noted that Kourani "has committed no crime and faces no prosecution."[16] It is also worth noting that, even if the agents' silence meant they had somehow adopted the memorandum, Denbeaux's notes themselves indicated that Kourani was "*not* seeking any kind of immunity of protection."[17] The District Court also did not err, much less clearly err, in finding that, in any event, Denbeaux and Kourani knew or should have known that the FBI agents lacked the authority to promise immunity.[18]

In sum, we can find no error in the District Court's denial of Kourani's motion to suppress.

---

[16] App'x at 106.

[17] *Id.* (emphasis added).

[18] *See, e.g.*, *United States v. Flemmi*, 225 F.3d 78, 85-86 (1st Cir. 2000) (explaining that FBI agents lack the authority to promise an informant immunity); *Doe v. Civiletti*, 635 F.2d 88, 96 (2d Cir. 1980) ("[I]t is axiomatic that the United States is not bound by the unauthorized acts of its agents.").

## B. Ineffective Assistance of Counsel

Kourani next argues that the District Court erred in denying his "motion for an order finding that prior defense counsel provided ineffective assistance of counsel."[19] We do not agree.

"Whether a defendant's representation violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed *de novo*."[20]

Kourani's claim that he received ineffective assistance of counsel is based on Denbeaux's conduct during the 2017 interviews with the FBI agents. But it has long been understood that "[a] defendant cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached."[21] It is well established that a defendant's right to counsel attaches when "adversary judicial proceedings" have been initiated.[22] Here, when Kourani agreed to

---

[19] App'x at 668 (capitalization omitted).

[20] *United States v. Levy*, 377 F.3d 259, 264 (2d Cir. 2004) (internal quotation marks omitted) (evaluating an ineffective assistance of counsel claim on direct appeal).

[21] *Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992); *see also Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel . . . .").

[22] *Compare Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 213 (2008) ("[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel."), *with United States v. Medunjanin*, 752 F.3d 576, 585 (2d Cir. 2014) (describing the Fifth Amendment right to counsel, which is meant "to insure that

14

meet with the FBI in 2017, his right to counsel had not attached because "adversary judicial criminal proceedings" against him had not begun.[23] Indeed, the last interview took place on April 26, 2017. The criminal complaint against Kourani was not filed until May 31, 2017, he was arrested on June 1, 2017, and his initial appearance, accompanied by counsel, took place on June 2, 2017.[24]

Accordingly, the District Court did not err in denying Kourani's motion claiming that he had ineffective assistance of counsel during the 2017 interviews.

---

the right against compulsory self-incrimination [i]s protected" (internal quotation marks omitted)).

[23] *United States v. Stein*, 541 F.3d 130, 152 (2d Cir. 2008) ("The Supreme Court has pegged commencement of a prosecution to the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (internal quotation marks and alterations omitted)).

[24] Even assuming *arguendo* Kourani's right to counsel had attached during the 2017 meetings, he has not shown that Denbeaux's assistance was not "reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Specifically, Kourani has not demonstrated either that Denbeaux's alleged reliance on the FBI agents' asserted promise of confidentiality or Denbeaux's alleged failure to secure a "proffer" agreement in advance of the 2017 meetings with the FBI was objectively unreasonable. *See id*. ("[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."). As the District Court explained, the record supports the idea that the 2017 meetings were part of a strategic endeavor to exchange selective amounts of information for assistance with Kourani's family's immigration issues. Strategic maneuvers—even ones that ultimately fail—do not typically constitute constitutionally ineffective assistance. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999).

15

*C. Jury Instructions*

Next, Kourani asserts that the District Court erred when it declined to adopt his proposed jury instructions. We do not agree.

"We . . . review a claim of error in jury instructions *de novo,* reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error."[25] In so doing, we "examin[e] the entire charge to see if the instructions as a whole correctly comported with the law,"[26] and reflected the defendant's defense.[27]

As an initial matter, insofar as Kourani's challenge to the District Court's jury instructions on appeal is based on 18 U.S.C. § 3501(a), which provides guidance on how confessions are handled at trial,[28] we have held that "§ 3501 applies only to confessions made

---

[25] *United States v. Tropeano*, 252 F.3d 653, 657-58 (2d Cir. 2001). "We consider a jury instruction erroneous 'if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'" *United States v. Silver*, 864 F.3d 102, 118 (2d Cir. 2017) (quoting *United States v. Finazzo*, 850 F.3d 94, 105 (2d Cir. 2017)). Even where an instruction is erroneous, we will affirm if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Sheehan*, 838 F.3d 109, 121 (2d Cir. 2016) (internal quotation marks omitted).

[26] *United States v. Ferguson*, 676 F.3d 260, 275 (2d Cir. 2011) (internal quotation marks omitted).

[27] *See United States v. Vasquez*, 82 F.3d 574, 577 (2d Cir. 1996) ("A criminal defendant is entitled to a jury charge that reflects his defense.").

[28] Under this provision, a "trial judge shall . . . determine any issue as to voluntariness," and, "[i]f the trial judge determines that the confession was

16

during interrogation following arrest or detention."[29] Because Kourani had not been arrested or detained when he made the statements at issue during the 2017 meetings, the District Court was not required to instruct the jury on Kourani's confessions in accordance with this statutory provision.[30] Even so, the District Court still instructed the jury to "give [Kourani's] statements such weight, if any, as you feel they deserve in light of all the circumstances."[31] This instruction comported with the law and accurately reflected Kourani's defense.

Kourani argues that the District Court erred by failing to give an instruction that the jury could not convict him if his admissions were

---

voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501(a).

[29] *United States v. Stevens*, 83 F.3d 60, 67 (2d Cir. 1996).

[30] *See United States v. Valdez*, 16 F.3d 1324, 1333 (2d Cir. 1994) (holding that § 3501 applies only to confessions made during interrogation following arrest or detention).

[31] App'x at 1679; *see also United States v. Elfgeeh*, 515 F.3d 100, 125 (2d Cir. 2008) (explaining that under § 3501, "the trial court, after admitting in evidence a defendant's [post-arrest] self-inculpatory statements that it found were made voluntarily, shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." (internal quotation marks omitted)).

not corroborated.[32] But we have never held that a district court is required to issue any such instruction.[33]

Kourani further argues that the District Court erroneously failed to instruct the jury that being a "supporter" of Hizballah is not illegal

---

[32] Kourani asked the District Court to instruct the jury that "a person may not be convicted of an offense solely upon evidence of a confession or admission made by that person" and "[t]here must be some additional proof that the crime charged were [sic] committed." App'x at 695.

[33] "It is a long-settled principle that 'an accused may not be convicted on his own uncorroborated confession,'" *United States v. Bryce*, 208 F.3d 346, 354 (2d Cir. 1999), *as amended* (Jan. 19, 2000) (quoting *Smith v. United States*, 348 U.S. 147, 152 (1954)), and that "there be substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement," *Bryce*, 208 F.3d at 354 (internal quotation marks omitted). We have, however, concluded that when there is such independent evidence "any error in failing to instruct the jury on the corroboration rule is not 'so egregious and obvious' to constitute plain error." *United States v. Paracha*, 313 F. App'x 347, 350 n.2 (2d Cir. 2008) (non-published summary order) (internal quotation marks omitted). We did so noting that other Circuits to consider the issue have held that a district court is not required to instruct a jury on a so-called corroboration rule. *See, e.g.*, *United States v. Howard*, 179 F.3d 539, 543 (7th Cir. 1999) ("[A] district court is not obligated to instruct the jury to make a specific finding as to whether the government presented substantial independent evidence to corroborate the defendant's confession."); *United States v. Dickerson*, 163 F.3d 639, 642 (D.C. Cir. 1999) (same); *United States v. Singleterry*, 29 F.3d 733, 739 (1st Cir. 1994) (holding "where a full confession dominates the government's proof, it is fair to assume that a jury will interpret its duty to find guilt beyond a reasonable doubt to mean that it cannot simply accept a confession at face value"); *but see United States v. Marshall*, 863 F.2d 1285, 1285-86, 1287 (6th Cir. 1988) (holding that the jury should have been instructed that "it could not find the defendant guilty solely on the basis of defendant's uncorroborated admissions" but also acknowledging that "[c]ourts have held that proof that the criminal act took place—the so-called 'corpus delicti'—will satisfy the corroboration requirement"). We agree with the 7th, D.C., and 1st Circuits in this respect.

18

in the United States.[34] While it is true that our law "does not prohibit or punish mere membership in or association with terrorist organizations,"[35] Kourani has pointed to no authority, below or on appeal, for his contention that the District Court was required to give Kourani's requested instruction with respect to his being a "supporter," as opposed to a mere member, of Hizballah.[36]

In sum, the District Court's charge, when viewed as a whole, was not erroneous, much less prejudicially erroneous.

## D. Sufficiency of the Evidence

Kourani next argues that the evidence was legally insufficient to sustain his conviction. We do not agree.

Although we review a defendant's challenge to the sufficiency of the evidence *de novo*, "we will uphold the judgment[] of conviction if 'any rational trier of fact could have found the essential elements of

---

[34] Kourani Br. at 48. We note that such an instruction was not included in the defense's request to charge. *See* App'x at 687-97. Rather, defense counsel made this request for the first time at the charge conference. *See* App'x at 1498 ("In page either 13 or 14 just because I think a reasonable view of the evidence could be that my client likes Hezbollah or believes in the mission of Hezbollah, and so, in a colloquial sense, is a supporter of Hezbollah, but that that's not illegal in the United States, but providing material support, obviously, is illegal, just so he's not convicted because he looked at some YouTube videos.").

[35] *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011).

[36] In any event, the jury was amply charged as to Count One regarding the meaning of "material support." *See* App'x at 1624-28.

19

the crime beyond a reasonable doubt.'"[37] In our evaluation of "a sufficiency challenge, we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor."[38]

Kourani principally argues that the evidence adduced at trial is insufficient to support his conviction because the Government's case-in-chief rested on his admissions, which he contends were insufficiently corroborated. But a review of the trial record shows that the Government presented evidence that corroborated the statements Kourani made to the FBI agents, including data on Kourani's laptop, his internet search history, and his travel history. The corroborating information need only "prove that the confession was reliable" and "the confession, if proven reliable, may serve as the only evidence reaching the *corpus delicti*" or "body of the crime."[39]

We therefore cannot say that the evidence presented at trial was insufficient to support Kourani's conviction.

---

[37] *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[38] *Id.* (alterations and internal quotation marks omitted).

[39] *United States v. Irving*, 452 F.3d 110, 118 (2d Cir. 2006) (internal quotation marks omitted).

*E. Reasonableness of Sentence*

Finally, Kourani challenges his sentence as unreasonable. We do not agree.

We review a criminal sentence for reasonableness, which "amounts to review for abuse of discretion."[40] We find a sentence *procedurally* unreasonable if the District Court "fail[ed] to calculate (or improperly calculate[d]) the Sentencing Guidelines range, treat[ed] the Sentencing Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] adequately to explain the chosen sentence."[41] A sentence is *substantively* unreasonable "where the trial court's decision cannot be located within the range of permissible decisions,"[42] or when the sentence "constitute[s] a manifest injustice or shock[s] the conscience."[43]

---

[40] *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012) (quoting *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc)).

[41] *Robinson*, 702 F.3d at 38.

[42] *Cavera*, 550 F.3d at 189 (internal quotation marks omitted); *see also United States v. Young*, 811 F.3d 592, 598–99 (2d Cir. 2016) ("In reviewing the substantive reasonableness of a sentence, [the appellate court must] take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." (internal quotations marks omitted)); *United States v. Hsu*, 669 F.3d 112, 120 (2d Cir. 2012) ("We review substantive challenges to a sentence under a 'deferential abuse-of-discretion standard.'" (quoting *Cavera*, 550 F.3d at 189)).

[43] *United States v. Rigas*, 583 F.3d 108, 124 (2d Cir. 2009) (internal quotation marks omitted). Put another way, substantive unreasonableness "provide[s] a

*a. Procedural Reasonableness*

Kourani's challenge to the procedural reasonableness of his sentence does not rest on the District Court's calculation of the applicable range under the United States Sentencing Guidelines ("U.S.S.G.").[44] Rather, Kourani principally contends that the District

---

backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Id*. at 123.

[44] Rightly so, for the District Court correctly calculated the applicable range under the Guidelines. In considering Part M of the Guidelines, which provides recommendations with respect to offenses involving national defense, the District Court initially indicated—and Kourani's counsel agreed—that the appropriate Guideline was U.S.S.G. § 2M6.1. Under that Guideline, which refers to weapons of mass destruction and is applicable if the offense of conviction was committed with intent either to injure the United States or to aid a foreign terrorist organization, Kourani's base offense level would have been 42. However, the District Court concluded that Kourani's offense conduct did not fit perfectly under U.S.S.G. § 2M6.1, and it elected to apply U.S.S.G. § 2M5.3—as defense counsel also found preferable—which deals with the provision of material support or resources to a foreign terrorist organization. Under U.S.S.G. § 2M5.3, Kourani's base offense level was 26; and under U.S.S.G. § 2M5.3(b)(1), his offense level was increased by two steps to 28 because his offense involved firearms or other material support with intent or reason to believe it would be used to assist in a violent act. The District Court also found applicable the terrorism enhancement in U.S.S.G. § 3A1.4(a), which added a 12-level increase in the offense level; thus Kourani's total offense level was 40. Under U.S.S.G. § 3A1.4(b), Kourani's criminal history category was VI. Accordingly, the District Court concluded that the advisory Guidelines range for Kourani was a term of imprisonment of 360 months to life.

Court erred by failing to consider, under 18 U.S.C. § 3553(a)(6), the need to avoid unwarranted sentencing disparities.[45] We do not agree.

Indeed, the District Court directly addressed that § 3553(a) factor during the sentencing hearing. Although Kourani had drawn the District Court's attention to cases in which the defendants had received sentences of 15-20 years of imprisonment, the District Court noted that the Government had pointed out "significant distinctions" between the present case and the cases on which Kourani relied.[46] And the District Court expressly agreed with the Government's view that Kourani's conduct presented a "unique" case, and it found that Kourani's proffered "comparisons [we]re not fair."[47] In sum, we see no error in the District Court's conclusion that the cases on which Kourani relied involved defendants who did not commit the range of conduct of which Kourani stood convicted.

Moreover, the record shows that the District Court properly considered the other § 3553(a) factors in sentencing Kourani, including the seriousness of the offense, the need for deterrence, the need to promote respect for the law, the need to protect the public from further

---

[45] Specifically, § 3553(a)(6) includes as a factor "the need to avoid any unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"

[46] App'x at 2104.

[47] App'x at 2108.

23

crimes, and the need "not [to] impos[e] a sentence that is greater than necessary to accomplish the objectives of sentencing."[48]

Nor did the District Court procedurally err by selecting a sentence based on clearly erroneous factual findings.[49] The District Court's inferences—regarding Kourani's travel to China as part of an IJO operation to procure explosive material and Kourani's operation of "front" companies as part of his IJO cover identity—were not clearly erroneous. Indeed, with respect to both findings, the District Court properly adopted the United States Probation Office's factual findings as set forth in the Presentence Report.

---

[48] *See* App'x at 2133-34. The District Court's assessment that a 40-year term of imprisonment met the statutory criteria was supported by, *inter alia*, its findings that Kourani knew Hizballah was a terrorist organization; that Kourani provided material support to Hizballah for over ten years; that during that period Kourani fraudulently obtained United States citizenship by lying about his membership in Hizballah; that items found in Kourani's home after his arrest suggested Kourani's "continuing involvement with Hizballah, and [that he was] awaiting a time when he would get a signal to do something in the interest of Hizballah," App'x at 2106-07; that Kourani had returned to Hizballah for additional military training after gaining United States citizenship, "indicat[ing] that he intended to injure the United States," App'x at 2083; and that "if he were not adequately punished, he [would] be dangerous," App'x at 2133.

[49] Where, as here, a procedural challenge rests *not* on the district court's calculation or application of the Guidelines, but rather, on a defendant's assertion that the sentence was based on a sentencing court's erroneous factual determination, the standard of review is clear error. *See United States v. Garcia*, 413 F.3d 201, 221-22 (2d Cir. 2005) ("To reject a finding of fact as clearly erroneous, [an appellate court] must, upon review of the entire record, be left with the definite and firm conviction that a mistake has been committed."(internal quotation marks omitted)).

### b. *Substantive Reasonableness*

Kourani contends that his sentence is substantively unreasonable, largely for the same reasons as he contends that it was procedurally unreasonable.[50] We disagree for the same reasons we reject his procedural challenge to the reasonableness of his sentence. Further, Kourani fails to demonstrate that his sentence—which he concedes on appeal was within the applicable advisory Guidelines range of 360 months to life imprisonment—cannot be located within the range of permissible decisions.[51] Nor does our review of the record give any indication that, in light of the facts and circumstances of his case, Kourani's sentence was "shockingly high . . . or otherwise unsupportable as a matter of law."[52] Indeed, Kourani's sentence

---

[50] *See* Kourani Br. at 75 ("As we show above, the sentence was substantively unreasonable because it far exceeded sentences imposed on defendants convicted of engaging in similar conduct and was based on inferences not supported by the record."). Kourani also stated on appeal, without further elaboration, that "the sentence imposed by the lower court was not substantively reasonable" because the District Judge "abused his discretion by imposing a sentence that: (1) was based on an erroneous calculation of the sentencing guidelines; and (2) included special conditions of supervised release which were not supported by the record." Kourani Br. at 74 (capitalization omitted).

[51] *United States v. Preacely*, 628 F.3d 72, 79 (on appeal, a district court's sentence is set aside for substantive unreasonableness "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions" (internal quotation marks omitted)).

[52] *Id*. at 83 (internal quotation marks omitted).

25

simply "reflect[s] Congress' judgment as to the appropriate national policy for such crimes."[53]

We also note that, in arriving at the total term of imprisonment of 40 years, the District Court was careful to order that most of the terms of imprisonment it imposed would be served concurrently. Indeed, the District Court noted that if it were to impose the statutory maximum prison term for each of Kourani's seven counts of conviction and impose them consecutively—as advocated by the Government—Kourani's prison term would be 110 years.[54] But the District Court declined to impose consecutive terms of imprisonment on Kourani's counts of conviction, with the exception of Count 8.[55] And although

---

[53] *United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006).

[54] *See* App'x at 2090-91; *id*. at 2131-32 (maxima of 20 years each for Counts 6 and 7 (contributing and conspiring to contribute services to Hizballah); 15 years each for Counts 1 and 2 (providing and conspiring to provide material support to Hizballah); 10 years for Count 3 (receiving military training from Hizballah); five years for Count 4 (conspiracy to receive such training); and 25 years for Count 8 (naturalization fraud to facilitate an act of terrorism)).

[55] While the District Court elected to impose the maximum for each offense other than Count 8, it ordered that most of those terms be served concurrently. Thus, the District Court made the terms on Counts 6 and 7 concurrent with each other, and it made the terms on Counts 1 and 2 concurrent with each other as well as with the concurrent terms on Counts 6 and 7, for a total of 20 years on those four counts. The District Court also ordered that the five-year term on Count 4 be served concurrently with the 10-year term on Count 3, for a total of 10 years on those two counts. However, because the District Court found that the offense conduct for Counts 3 and 4 was different than the offense conduct for Counts 1, 2, 6, and 7, the District Court ordered that the 10-year concurrent term for Counts 3 and 4 be served *consecutively* to the 20-year concurrent terms on Counts 1, 2, 6, and 7, for a total of 30 years for those six counts.

the District Court ordered that the term of imprisonment for Count 8 be served consecutively to the terms of imprisonment imposed on the other six counts, the District Court imposed a 10-year term of imprisonment (rather than 25 years).

On our review of the record, we cannot conclude that the District Court's imposition of a 480-month prison term was either procedurally or substantively unreasonable.

## III. CONCLUSION

To summarize, we hold as follows:

(1) the District Court did not err when it denied Kourani's motion to suppress his confessions during a series of 2017 interviews with the FBI;

(2) the District Court did not err when it denied Kourani's motion claiming that he had received ineffective assistance of counsel during the 2017 interviews because his right to counsel had not yet attached;

(3) the District Court did not err when it declined to provide Kourani's requested jury instructions;

(4) the evidence adduced at trial was sufficient to support Kourani's conviction; and

(5) Kourani's sentence principally of 480 months of imprisonment was neither procedurally nor substantively unreasonable.

Over a period of roughly two years, the District Court presided carefully and thoughtfully over these complex proceedings, affording Kourani, in full measure, the due process of law guaranteed by the Constitution.

We have reviewed all of the arguments raised by Kourani on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the District Court's December 18, 2019 judgment of conviction.

POOLER, *Circuit Judge*, concurring in part and dissenting in part:

I concur with the dispositions in this case with one exception: affirming the sentence. The district court did not err in calculating the Guidelines range, and it articulated various reasons for imposing 480 months—40 years—of imprisonment. Nevertheless, I decline to affirm a sentence that effectively requires Kourani to spend the rest of his adult life in prison, especially when Kourani's actions have not directly injured anyone. Such a disproportionate sentence "shock[s] the conscience." *United States v. Rigas*, 583 F.3d 108, 124 (2d Cir. 2009) (internal quotation marks omitted).

Other defendants who have committed similar crimes received lesser sentences. *See, e.g.*, Sentencing Memorandum by USA, Minute Entry, *United States v. Abdurasal Hasanovich Juraboev*, No. 15-CR-95 (E.D.N.Y. 2017), ECF Nos. 244, 251 (sentencing a defendant who was affiliated with ISIS, wanted to kill President Obama, and schemed to bomb Coney Island to 180 months', or 15 years', imprisonment); Sentencing Submission by USA, Judgment in a Criminal Case, *United States v. Wesam El-Hanafi*, No. 10-CR-162 (S.D.N.Y. 2015), ECF Nos. 197, 211 (sentencing a defendant who provided financial support and surveillance information to Al Qaeda to 15 years' imprisonment); Sentencing Memorandum by USA, Filed Judgment in a Criminal Judgment, *United States v. Mohamed Ibrahim Ahmed*, No. 10-CR-131 (S.D.N.Y. 2013), ECF Nos. 96, 101 (sentencing a defendant to 111 months', or 9.25 years', imprisonment for providing money to and engaging in weapons training with Al-Shabab). These shorter, yet still

very serious sentences, for comparable conduct suggest that Kourani's sentence is "greater than necessary to achieve the goals of § 3553(a)." *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (internal quotation marks omitted).

Here, had the district court ordered the sentences imposed for each of his convictions to run concurrently, Kourani would have served 20 years in prison and subsequently been deported. This is sufficient to accomplish the goals of imposing an adequate punishment, deterring future criminal conduct, and avoiding unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a). Instead, Kourani must serve twice that. Although a 20-year sentence is below the Guidelines range, in certain areas of the law, without careful consideration of an individual defendant's circumstances, the Guidelines may "generate unreasonable results." *Dorvee*, 616 F.3d at 188; *see United States v. Stewart*, 590 F.3d 93, 153 (2d Cir. 2009) (Calabresi, J., concurring) (noting that the terrorism enhancement is "undeniably broad" and "has dramatic consequences on the applicable Guidelines range"). Growing concern exists about the fairness of the exceedingly high sentencing enhancements on "material support" of terrorism crimes, particularly where the support is nonviolent. *See, e.g.*, Laura Rovner & Jeanne Theoharis, *Preferring Order to Justice*, 61 AM. U. L. REV. 1331, 1348-49 & n.72 (2012) (explaining that sentences subject to the terrorism enhancement tend to be 7.8 times longer than those that are not); James P. McLoughlin, Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for*

*Foreign Terrorist Organizations*, 28 LAW & INEQ. 51, 57-58 (2010) (explaining how the terrorism enhancement results in sentences "often disproportionate to the conduct of conviction" (footnote omitted)).

Ultimately, Kourani received a fair trial and was properly adjudicated guilty by a jury. His crimes were undeniably serious. It is not lost on me that Kourani's actions could have culminated in far more injurious results. Nevertheless, they did not, and accordingly, the sentence imposed is disproportionately high.