23-6169-cr (L)
*United States v. Christopher*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of December, two thousand twenty-four.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

>> *Appellee*,

> v.                                                            23-6169-cr (L), 23-6204-cr
>                                                                  (Con)

DARRIUS CHRISTOPHER & ROBERT WADE,

>> *Defendants-Appellants*.

_____

| | |
|---|---|
| For Appellee: | RYAN B. FINKEL (Nathan Rehn, *on the brief*), for Damian Williams, United States Attorney for the Southern District of New York, New York, NY |
| For Defendant-Appellant Christopher: | JAMES L. HEALY (Steven G. Brill, *on the brief*), Sullivan & Brill, LLP, New York, NY |
| For Defendant-Appellant Wade: | James M. Branden, Law Office of James M. Branden, Staten Island, NY |

1

Appeal from judgments of the United States District Court for the Southern District of New York (Sidney H. Stein, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Darrius Christopher and Robert Wade appeal from judgments of the United States District Court for the Southern District of New York (Sidney H. Stein, *District Judge*), entered on February 21, 2023, sentencing Christopher to 137 months of imprisonment and three years of supervised release, and Wade to 168 months of imprisonment and three years of supervised release. A jury found each defendant guilty of possessing ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and conspiracy to possess ammunition as a convicted felon in violation of 18 U.S.C. § 371. The case involved an incident in the Bronx, New York, in which two people were captured on video surveillance footage walking to and from the scene of a shooting that injured three victims. The key questions at trial pertained to identity—namely, whether the Defendants were the shooters and, consequently, used the ammunition charged in the indictment. On appeal, Christopher and Wade challenge various evidentiary rulings the district court made at trial. Christopher also challenges the district court's jury instructions and its application of a two-level obstruction of justice enhancement to his sentence. We assume the parties' familiarity with the case.

I.     **Evidentiary Rulings**

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude

evidence was manifestly erroneous." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015).[1]

Upon review of the record, we discern no error in the district court's evidentiary rulings.

## A. Evidence of the Defendants' Purported Gang Affiliation

First, the district court did not abuse its discretion by admitting expert testimony from Detective Nicholas Geroulakis of the New York Police Department about various gang practices, including gang-affiliated slang and symbols, as they related to a video one of the three shooting victims posted to social media and materials linked to the Defendants. For example, just a few days before the shooting, Christopher had sent someone a message saying "We just not Brim. We still Blood"; Detective Geroulakis explained that a group known as the Mac Ballas had then recently split off from another gang, the New York Blood Brim Army. Similarly, investigators had located a memo on Wade's cellphone that used various terms in unusual ways common to the Mac Ballas—for example, referring to themselves as "Ewoks." And just ten days before the shooting, Christopher had sent a message stating that "I'm going gripped up"; Detective Geroulakis explained that gang members often refer to firearms as "grip[s]" and "hammer[s]." The Defendants argue that because this evidence identified them as gang members, they were unfairly prejudiced in the eyes of the jury. We disagree.

This evidence was admissible under Federal Rule of Evidence 404(b), which governs the admissibility of "[e]vidence of any other crime, wrong, or act." Under our "inclusionary approach" to Rule 404(b), "other-crimes evidence is admissible if offered for any purpose other than to show a defendant's criminal propensity." *United States v. Williams*, 930 F.3d 44, 62 (2d Cir. 2019). Such evidence may be admissible, for example, to prove "motive, opportunity, intent, preparation,

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

3

plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Here, evidence that the Defendants were gang-affiliated was admissible for several purposes other than to show their criminal propensity. First, the evidence showed the Defendants' alleged motive for possessing ammunition, which was to shoot one of the three victims because he had posted a video to social media provoking rival gang members. Second, the evidence showed the Defendants' opportunity, as gang members, to possess guns and ammunition—indeed, under Detective Geroulakis's interpretation, Christopher's message that he was "going gripped up" indicated that he "carr[ied] a firearm." Third, this evidence was probative of the relationship and mutual trust between the Defendants, who had been charged as coconspirators. *See United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (under Rule 404(b), "[e]vidence of prior bad acts is admissible to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators").[2]

We are not persuaded that the district court was required to exclude this evidence under Federal Rule of Evidence 403, which permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[2] The Government argues that "[e]vidence of uncharged criminal conduct may be admitted without reference to Rule 404(b) if it constitutes direct proof of charged criminal conduct, provides the jury with background for the events alleged in the indictment, or arose out of the same transaction or series of transactions as the charged offenses." Appellee's Br. at 14 (citing *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994); *Unites States v. Diaz*, 176 F.3d 52, 79–80 (2d Cir. 1999); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997)). It is true that an uncharged prior bad act "that is alleged to have been done in furtherance of [an] alleged conspiracy" is admissible as direct evidence of the charged conspiracy. *Diaz*, 176 F.3d at 79. However, this Court has otherwise consistently assessed prior bad acts under Rule 404(b), including acts that provide "background of the conspiracy charged." *See, e.g.*, *Rosemond*, 958 F.3d at 125; *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017); *United States v. Hart*, 852 F. App'x 596, 599 (2d Cir. 2021) (summary order); *United States v. Brettschneider*, 832 F. App'x 14, 20 (2d Cir. 2020) (summary order); *United States v. Olivera*, 797 F. App'x 40, 45 (2d Cir. 2019) (summary order); *United States v. Gracesqui*, 730 F. App'x 25, 29 (2d Cir. 2018) (summary order); *United States v. Amato*, 31 F. App'x 21, 25 (2d Cir. 2002) (summary order). In keeping with this consistent practice, we have assessed Detective Geroulakis's gang-related testimony under Rule 404(b) above.

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When an appellant raises a challenge under Rule 403, our review is "highly deferential in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012). Here, the district court permitted limited evidence regarding the Defendants' alleged gang affiliation, including testimony "focusing on language, symbols, hand gestures and clothing that regular people wouldn't know." Christopher App'x at 139–40. As discussed, this evidence was probative of the Defendants' motive, intent, and opportunity to commit the crimes with which they were charged, as well as their relationship as coconspirators. The mere fact that the evidence implicated the Defendants as potential gang members did not render it unduly prejudicial. Rather, "courts routinely admit evidence of gang membership . . . where the evidence is relevant for a proper purpose." *Williams*, 930 F.3d at 63.

Nor are we persuaded that Detective Geroulakis's expert testimony was irrelevant or otherwise improper because he did not speak with absolute certainty as to the meaning of some gang-related language. Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" if the proponent of the witness demonstrates, among other things, that "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Geroulakis's testimony helped the jury understand the meaning of particular words in the Defendants' communications and the victim's social media video. That Geroulakis did not testify with unequivocal certainty that particular words always have particular meanings goes "to the weight, not the admissibility" of his testimony. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

**B. Identification Testimony as to Wade**

Likewise, the district court did not abuse its discretion by permitting Wade's parole officer, Najieb Isaac, to identify Wade in surveillance footage taken at the time of the shooting. Federal Rule of Evidence 701 provides that, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Wade asserts that the district court erred in admitting Issac's in-court identification testimony because the jury was in "just as good a position" as Isaac to draw an inference as to whether he was in the surveillance footage. But the district court appropriately determined that Isaac's testimony would help the jury determine Wade's identity because the surveillance footage was not entirely clear, and because Isaac—who had met with Wade several times—was familiar with him. *See United States v. Walker*, 974 F.3d 193, 205 (2d Cir. 2020) (concluding that the district court did not abuse its discretion by admitting identification testimony from the defendant's probation officer who had "spent many hours with [the defendant] . . . and had the opportunity to observe physical traits such as his gait, which were on display in the surveillance video but not at trial"). Moreover, the jury's opportunity to observe Wade's facial features was limited; due to pandemic precautions, the defendants were masked during trial, save on one occasion when they were required to lower their masks briefly to permit the jury to see their faces.

**C. Excluded Testimony of Law Enforcement Officers**

Nor did the district court abuse its discretion by excluding, pursuant to Rule 403, law enforcement officer testimony sought by the Defendants regarding the officers' investigation into a third person who was present at the scene of the shooting. At the outset, the district court did

not foreclose the Defendants' opportunity to develop their theory that other suspects were more likely to have committed the shooting. Indeed, defense counsel cross-examined Sergeant Joseph DeCandia and Detective Brian Toland of the New York Police Department on this precise issue. *See* Christopher App'x at 766, 1030. In excluding the testimony of other law enforcement officers about their investigative steps, the district court explained that the focus of the trial should be "the evidence or lack of evidence" as to the Defendants—which could include evidence suggesting that third parties rather than the Defendants were the shooters—"not what the law enforcement officers were doing or not doing to continue their investigation." *Id.* at 1097–98. We find no error in the district court's careful balancing of the Rule 403 factors and conclude that it acted well within its broad discretion in excluding this testimony. *See Coppola*, 671 F.3d at 244; *see also United States v. Saldarriaga*, 204 F.3d 50, 52–53 (2d Cir. 2000) (concluding that the district court properly instructed the jury that law enforcement's "failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty").

### D. Stipulation Regarding Wade's Prior Felony Conviction

We also reject Wade's argument that the district court erred by accepting the parties' stipulation that included the nature of his prior felony conviction—namely, that he "was arrested and convicted of a crime . . . in which [he] possessed a firearm." Christopher App'x at 1457. By voluntarily agreeing to the stipulation, Wade waived any challenge to its content. *See United States v. Malpeso*, 126 F.3d 92, 95 (2d Cir. 1997). Wade argues on appeal that the district court refused to accept a stipulation that excluded the nature of his prior offense. But his assertion is unsupported by the record. The district court merely observed that, although the Government's proposed stipulation seemed like "a pretty good deal for the defense," this was for the Defendants

7

to decide, Christopher App'x at 151–52, and the court was "not going to urge a stipulation," *id.* at 160. We therefore reject Wade's challenge to the admission of the stipulation.

## II.     Jury Instructions

"We review a claim of error in jury instructions *de novo*, reversing only where [the] appellant can show that, viewing the charge as a whole, there was a prejudicial error." *United States v. Kourani*, 6 F.4th 345, 354 (2d Cir. 2021). Upon review of the record, we see no such error here.

First, we reject Christopher's argument that the district court erred by providing a so-called "uncalled witness" instruction after excluding certain law enforcement testimony. "When a particular witness is equally available to both sides but neither party calls the witness, the court has discretion to (1) give no instruction and leave the entire subject to summations, (2) instruct the jury that no unfavorable inference may be drawn against either side, or (3) instruct the jury that an adverse inference may be drawn against either or both sides." *United States v. Johnson*, 117 F.4th 28, 49 (2d Cir. 2024). Here, the district court noted that there were "persons whose names [the jury] heard during the course of [the] trial who did not testify," explained that "each party had an equal opportunity or lack of opportunity to call any of these witnesses," and instructed the jury that it should not draw any inferences or reach any conclusions as to how these individuals would have testified if they had been called. Christopher App'x at 1752. Christopher offers no authority for the proposition that, when a district court excludes certain *testimony*, an uncalled witness charge becomes inappropriate. In fact, this Court has held the opposite. *See United States v. Dawkins*, 999 F.3d 767, 796–97 (2d Cir. 2021). In *Dawkins*, it was not error for a district court to provide a similar "uncalled witness" instruction after excluding irrelevant testimony from a proposed witness. *Id.* Specifically, this Court noted that the instruction was permissible because

8

"if the defendants had wanted to call [the proposed witness] to testify . . . for some other permissible purpose, they clearly could have done so." *Id.* at 797. Here, as in *Dawkins*, the officers Christopher wished to call remained available to testify for a proper purpose. Thus, the district court did not err in providing the "uncalled witness" instruction in this case.

Nor did the district court err by refusing to provide the "theory of defense" charge Christopher requested. Christopher asked the district court to provide the jury with his defense theory that the Government had failed to prove that he possessed ammunition, participated in a shooting, or entered an agreement with any other person to possess ammunition. Christopher App'x at 1546. The district court, while declining to include the parties' arguments in its jury charge, instructed the jury that "a defendant's mere presence at the scene of an alleged crime does not by itself make him a member of the conspiracy." *Id.* at 1768. The district court also repeatedly instructed the jury that the Government must prove each element of a charged crime beyond a reasonable doubt. *See id.* at 1739–41, 1758–70. Although the district court did not use the precise language Christopher requested, it adequately charged the jury as to the content of his theory of defense. *See United States v. Wexler*, 522 F.3d 194, 205–06 (2d Cir. 2008).

## III. Application of the Obstruction of Justice Enhancement to Christopher's Sentence

Finally, we reject Christopher's challenge to the district court's application of a two-level obstruction of justice enhancement to his sentence. Section 3C1.1 of the United States Sentencing Guidelines provides for a two-level enhancement if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

9

"Findings of fact are reviewed for clear error, and legal conclusions such as a ruling that the established facts constituted obstruction or attempted obstruction under the Guidelines are reviewed de novo." *United States v. Strange*, 65 F.4th 86, 88–89 (2d Cir. 2023).

Here, the district court applied the obstruction enhancement after finding that Christopher (1) destroyed or concealed a "G-Star" sweatshirt he wore during the shooting and (2) falsely claimed after his arrest that he did not know Wade. Christopher App'x at 1893–94. Given that Christopher does not dispute that he falsely denied knowing Wade, a charged coconspirator, there is no error in the district court's conclusion that Christopher obstructed or attempted to obstruct law enforcement's investigation into his charged crimes.[3] Accordingly, we need not consider whether the obstruction enhancement could also have been imposed based on his possible disposal of the sweatshirt.

\*     \*     \*

We have considered the Defendants' remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

---

[3] At oral argument, Christopher argued that his post-arrest denial that he recognized Wade would not support an obstruction enhancement due to Note 5(B) to U.S.S.G. § 3C1.1, which advises that "making false statements, not under oath, to law enforcement officers" would generally not qualify as obstruction, unless the statement is "materially false" and "significantly obstructed or impeded the official investigation . . . of the instant offense." *See* Oral Argument at 24:45, *United States v. Christopher*, No. 23-6169, 23-6204 (argued Dec. 4, 2024), *available at* https://ww3.ca2.uscourts.gov/decisions. However, he did not raise that argument until his reply brief, *see* Appellant's Reply Br. at 25, and "[w]e generally treat arguments raised for the first time in a reply brief as waived." *United States v. George*, 779 F.3d 113, 119 (2d Cir. 2015).